CASE 43.—ACTION BY BANK OF RUSSELLVILLE AGAINST
MOSS E. HART AND ANOTHER ON NOTES.—De-
cember 5.

# Hart v. Bank of Russellville

Appeal from Logan Circuit Court.

W. P. SANDIDGE, Circuit Judge.

From the judgment Moss E. Hart appeals—Re-
versed.

1.  Principal and Surety—Husband and Wife—Notes—Presump-
    tion—Evidence.—Where a wife's name precedes that of her
    husband on a note, the presumption that she is the principal
    debtor, arising from the position of their signatures, may be
    rebutted by parol proof of surrounding circumstances indicat-
    ing the contrary.

2.  Same—Evidence.—A husband, desiring to bororw $500, pro-
    cured his wife's signature to a note above his own, and for-
    warded it to plaintiff bank with a letter, requesting that it be
    discounted. The proceeds were placed either to the hus-
    band's credit on the books of the bank, or held subject to his
    order, and applied to a draft drawn by him individually
    through another bank. The husband was not his wife's agent
    to obtain such loan, and testified that she signed merely as
    surety. The officers of the bank did not testify in rebuttal,
    nor did they introduce the books of the bank nor the letter
    applying for the 'scount. Held, to rebut the presumption
    arising from the form of the note that the wife was a princi-
    pal, and relieved her from liability under Ky. Stats., 1903,
    section 2127, providing that a wife shall not be liable to answer
    for her husband's debt, unless her estate be set aside for
    that purpose by deed, mortgage, or other conveyance.

GRUBBS & GRUBBS and BROWDER & BROWDER for
appellant.

S. R. CREWDSON and H. S. McCUTCHEN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Appellee, Bank of Russellville, sued the appellant, Moss E. Hart, and her husband, S. B. Hart, in the court below upon two notes; one of $150, bearing date November 29, 1905, due 120 days after date, and the other $250, bearing date December 26, 1905, and due 90 days thereafter. It is admitted that these two notes were renewals of what was left of a matured note of $500 which had previously been executed to the bank by the same parties, and upon which S. B. Hart had paid $100. The appellant, Moss E. Hart, by separate answer, which was later amended, interposed, in substance, the defense that she signed the two notes in question and the original note of $500 as the surety of S. B. Hart, who was then and is now her husband; that they were executed for money borrowed by him of appellee, no part of which was received by her; and that by reason of her coverture and suretyship no liability was incurred by her in placing her signature to the notes. The affirmative matter of the answer as amended was controverted by reply, thereby completing the issues as to the question of appellant's liability upon the notes. There was, however, yet another matter involved in the litigation which seems to have been withdrawn by the parties, or settled. By agreement of parties, a jury was waived, and upon submission of the law and facts to the court judgment was rendered against the appellant, Moss E. Hart, in appellee's favor, for the amounts respectively of the notes in suit. Appellant applied for and was refused a new trial. Hence this appeal.

Was the appellant, Moss E. Hart, upon the facts presented by the record, principal in the two notes sued on, or only the surety thereon of her husband, S. B. Hart? It is insisted for appellee that, because appellant's name appeared first on the notes, it had the right to presume she was the principal. This would undoubtedly be true if appellee did bona fide regard her as principal, and by reason thereof extended the credit to her. So after all the real question is: Do the facts surrounding the transaction show that appellee bona fide extended the credit to her as principal or was the credit given to S. B. Hart and his wife's signature first merely a device to avoid the statute?

Ordinarily, it will be presumed that the name appearing first on a note as an obligor is that of the principal debtor, but this presumption may be overthrown by the facts of the case, or the conduct of the parties themselves, and it is admissible for one, whose name appears first, or above that of another on a note, to prove that his relation to the obligation is nevertheless that of a surety, and this he may do by parol testimony. Lewis v. Harbin, 5 B. Mon. 564; Emmons v. Overton, 18 B. Mon. 648; Bank v. Gaines, 87 Ky. 601, 9 S. W. 396, 10 Ky. Law Rep. 451; Skinner v. Lynn, 51 S. W. 167, 21 Ky. Law Rep. 185. Section 2127, Ky. St. 1903, declares that the wife's estate shall not be liable "upon a contract made after marriage to answer for the debt, default or misdoing of another, her husband included, unless such estate shall have been set apart for the purpose by deed of mortgage or other conveyance. * * *" As said in Crumbaugh v. Postell, 49 S. W. 334, 20 Ky. Law Rep. 1366, in respect to an attempt to hold the wife liable on certain notes which she had signed with her

husband and at his request, her name appearing first with the word "principal" attached, and his under hers with the word "surety" added: "In transactions of this kind, the courts must look to the substance, and whatever the parties themselves may designate or name the undertaking of the wife, if in fact it be an attempted assumption by her of the debt of another, she must be held not liable unless she binds herself in the statutory way. Any other course will speedily result in a nullification of the statute."

The facts connected with the transaction were, in brief that: About October 1, 1904, S. B. Hart, desiring to borrow $500, prepared a note for that amount, to which he procured his wife's signature above his own, and this note he forwarded by mail with a letter to the appellee, Bank of Russellville, requesting that it be discounted. It was promptly discounted by the bank, and its proceeds, less discount, either placed to the credit of S. B. Hart upon the books of the bank, or held subject to his order and applied to the payment of a draft drawn by him individually upon appellee through the Kentucky National Bank of Louisville. The inquiry naturally arises: Why did appellee hold the proceeds of the notes subject to S. B. Hart's order and apply them to the payment of his individual draft, if the loan was made to his wife? It cannot be claimed that it was because S. B. Hart was his wife's agent in negotiating the loan, for he did not hold himself out as such agent in applying for the loan, or make the draft as agent. The proceeds of the draft went to the credit of S. B. Hart in the Kentucky National Bank, and the entire amount was checked out by him in payment of numerous demands owing by him individually and for none of which was the wife liable.

The foregoing facts, and the inferences fairly deducible therefrom, were established by the deposition of S. B. Hart, the only witness in the case. Appellant and her husband could not both testify, and as she knew nothing of the transactions with respect to the discounting of the notes, except that she had signed them at her husband's request, and he knew all about them, he was required to testify as the more important witness of the two. There was no attempt to contradict S. B. Hart. No officer or employe of the bank testified, or offered in evidence the books showing the transactions with S. B. Hart, nor did they exhibit the letter of the latter requesting the loan for which the original note of $500 was executed, a copy of which the writer admitted he failed to retain. The fact that appellant received no part of the proceeds of the original note, of which those sued on were renewals, was well established by the uncontradicted testimony of S. B. Hart, as the following questions and answers in his deposition will show: "Q. Did the defendant, Moss E. Hart, derive any benefit from the discounted note to which you refer above? Ans. No, sir. Q. For whose benefit was the note executed? Who received the proceeds thereof? Ans. For my benefit. I received the proceeds." The checks drawn by S. B. Hart upon the proceeds of the original note paid on the draft made through the Kentucky National Bank are filed with his deposition, and they apparently support his testimony to the effect that he alone received and used the proceeds of the note. It is, to say the least, unusual for money loaned the principal to be paid to the surety, and, notwithstanding its claim that S. B. Hart was the surety, appellee offered no explanation of why it was done in this case. It also appears from the deposi-

tion of S. B. Hart that he and his wife lived for many years in Logan county before their removal to Louisville, and it is conceded for appellee that its officers were and are well acquainted with both of them and with their financial standing. In view of all this and their knowledge of the circumstances surrounding the discounting of the original note, which, with the uncontradicted testimony of S. B. Hart, were sufficient to overthrow the presumption of appellant's being the principal in the note arising from the position of her name thereon, it is strange that no inquiry should have been made at the time by appellee's officers or agents as to what her actual relation to the transaction was; and stranger still that they should have declined to give their testimony in support of the contention, made in the reply, that the loan evidenced by the note in question was made to appellant, and not to her husband. Their failure to so testify or to disclose the precise facts of the transaction is apparently attributable to their inability to contradict the testimony of S. B. Hart that the loan was to him and in no sense for the benefit of his wife.

It is insisted for appellee that this case is controlled by that of Thompkins v. Triplett, 110 Ky. 824, 23 Ky. Law Rep. 305, 62 S. W. 1021, 96 Am. St. Rep. 472. We are unable to see the analogy. In Thompkins v. Triplett, the husband of the appellee applied to Thompkins for a loan, which was refused, but which Thompkins said he would make to Mrs. Triplett. Triplett then had his wife to sign a note first and delivered this to Thompkins, who thereupon made the loan to her. Thompkins testified, and was not contradicted ,that he gave credit to Mrs. Triplett alone. These facts, in the opinion of this court,

warranted the conclusion that Mrs. Triplett was the real principal and had received the credit; her husband being a mere agent in the transaction to obtain for her the loan. In our opinion the case at bar is more nearly akin to Planters' Bank v. Major, 76 S. W. 331, 25 Ky. Law Rep. 702. The bank made a loan to Major on notes signed by himself and wife; her name appearing first. The notes were discounted by the bank, and their proceeds placed to the credit of the husband, who afterwards checked it out for his own use, applying part to pay an overdraft due the bank. This court, in declaring the wife not liable on the notes, in part said: "It is perfectly evident that her name was placed first on the notes simply to evade the operation of the statute, which made the notes void as to her if she signed as surety. If such evasions of the statute were tolerated, its purposes of protecting married women from this class of contracts would be entirely defeated." Much the same is the case of Hines v. Hays, 82 S. W. 1007, 26 Ky. Law Rep. 967. F. L. Hays, wishing to borrow money of a bank, offered his mother as surety. The bank refused to accept her, as she was a married woman, but informed Hays they would accept her note for the desired amount with him as surety. The note was thus executed and accepted by the bank and the proceeds placed to her credit. She immediately gave the son a check on the bank for the amount received upon the note, and by means thereof he received it. This was held to be a mere technical arrangement to avoid the effect of the statute prohibiting married women from binding themselves as sureties and was ineffectual to hold her. In the very recent case of Black v. McCarley's Adm'r, 104 S. W. 987, 31 Ky. Law Rep. 1198 a note of $2,000 was sued on. To this

note were the names of Thos. N. Black, his wife, Mary N. Black, and I. B. Black, as obligors, signed in the order here mentioned. The answer of Mrs. Black alleged that she was surety for her husband, and that he borrowed the $2,000 and used it in his business. Proof was made on the trial that Mrs. Black never saw McCarley or communicated with him, and that the $2,000 for which the note was given was received by the husband, T. N. Black, in a check of the St. Bernard Coal Company, payable to Mc-Carley, and by him indorsed to T. N. Black, who got the money on it. On the state of facts presented, it was held that Mrs. Black was only surety for her husband, in arriving at which conclusion the court said: "The uncontradicted testimony showed that she was his (T. N. Black's) wife at the time of its (the note's) execution. As there was no fact or cir-cumstance conducing to establish that she received the proceeds or any part thereof, a prima facie case was made out in her behalf, and she was entitled to the peremptory instruction requested."

The statute controlling this case (section 2127) was enacted to protect the property of a married woman from the dangerous liability of a surety and to re-strict her liability on such debt to the amount of her property actually set aside by mortgage or other writing for that purpose. If, however, the statute can be evaded by merely making her the apparent principal in an obligation of which another, whose name also appears to it, is the real beneficiary, its force will be in great measure abrogated, as a woman who is willing to become surety for another would equally consent to lend her name as an apparent principal. All the husband, who desires to use his wife's estate to secure credit, would have to do would

be to obtain her signature to a note apparently as principal, which he would readily do if he could secure it as surety. In the matter of mortgaging or conveying her estate as required by the statute to make it liable for the debt of another, it is probable the wife would require more solicitation; it being a more serious matter, and for this reason, as well as to limit her liability, the statute was enacted. In other words, most married women would readily sign a note, even as principal, to accommodate their husbands, when they would hesitate to tie up their property by a mortgage or other writing for the same purpose. While a strict construction of the statute may in some measure impair the credit of a married woman and make it more difficult for her to secure loans, it would influence the lender to satisfy himself affirmatively that in every instance she is principal in a joint obligation, and know that, if he does not, he takes the risk of running against the provision of the statute, and this, we assume, was the very purpose of its enactment.

From the facts presented by the record before us, we are constrained to hold that the appellant, Moss E. Hart, was not the principal, but only a surety, in the notes in controversy, and the $500 note of which they are renewals. If right in this conclusion, it follows that the learned judge of the circuit court erred in the judgment rendered.

Wherefore the judgment is reversed, and cause remanded for a new trial and such further proceedings as may be consistent with the opinion.