CASE 50—ACTION BY R. SWEARINGEN'S EXECUTOR AND
          TRUSTEE AGAINST MARY E. TYLER ON A PROM·
          ISSORY NOTE.—February 24.

# Swearingen's Executor and Trustee v. Tyler

Appeal from Shelby Circuit Court.

Swearingen's Executor and Trustee v. Tyler.

## C. C. MARSHALL, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

1. Husband and Wife—Married Women's Act—Borrowing Money.
   —Under the married women's act (Ky. St. 1909, sections 2127, 2128), providing that, if a married woman desires to sell, convey, or mortgage her real estate, her husband must join in the contract, and that her estate be subjected to the liability assumed for the debt, liability, or misdoing of another, unless the estate be set apart for that purpose by deed or mortgage or other conveyance, does not prevent a married woman from borrowing money and giving her note therefor, and such note is enforceable against her separate property.

2. Evidence—Parol Evidence—Principal and Surety.—The arrangement of names on a note does not conclusively establish the fact as to who is principal and who is surety, as it may be shown by evidence that the person whose name is first signed is a surety and the person whose name is last signed is principal, but usually the first signer is regarded as a principal.

3. Principal and Surety—Joint Obligation—Promissory Notes—Wife as Surety.—A married woman executed a note signed by herself and husband, her name appearing first. The check given for the note was indorsed by the wife and husband, and the latter used the proceeds in his business. The negotiations for the loan were conducted wholly by the husband. The payee of the note knew that a married woman could not sign as surety, and refused a note signed by the husband alone and accepted the note when signed by both. The transaction was an ordinary business transaction, and the payee derived no benefit therefrom other than the interest on the loan. Held, that the wife could not contend that she signed as surety.

4. Husband and Wife—Agency of Husband.—Evidence held to show that a wife constituted her husband her agent to deliver a note and accept a check in payment therefor.

5. Witnesses—Transactions with Decedent.—In a suit against a married woman on a note in which she claimed that she signed as surety and her husband as principal, the fact that her husband is dead does not, under the Code, preclude her from testifying that she received no portion of the proceeds of the note.

6. Witnesses—Deceased Agents.—Under the Code, a party to a

suit cannot testify concerning a transaction with a deceased agent of the adversary party.

7. Witnesses—Transactions with Deceased Agent—Exceptions.— In an action on a note executed by a married woman through the agency of her husband, the payee of the note is not prohibited by the Code from testifying to material facts, independent of what occurred between himself and the husband, such as that the husband was solvent, and that he, the payee, knew that a married woman could not be the surety for another.

GILBERT and GILBERT and J. C. BECKHAM and SON attorneys for appellant.

1. Where the husband made application to M. for a loan offering a note with himself as principal and his wife as surety, and the money was refused, with the statement from M. at the time that he would lend the money to his wife as principal and the husband as surety, and which was done, even if the money was used by the consent of the wife to pay the husband's debt, this being an original transaction and M. not being a creditor the wife is bound as principal.	Tomkins vs. Triplett 23 Ky. L. R. 305; Black vs. McGarvey's exr., 31, Ky. L. R. 1198; Third National Bank vs. Tierney, 33rd, Ky. L. R. 418.

2. But if M. had been a creditor of the husband and the money had been used to pay pre-existing debts of the husband, the wife would be deemed a security and not bound, even if her name was signed first to the note. It would then have been regarded as a mere attempt to evade the Statute.	Planter's Bank vs. 967; Black vs. McCarley's admr., 31 Ky. Law Rep. 1198; Pastell vs. Crumbaugh, 23 Ky. Law Rep. 2193; Russell & Co., vs. Rice, 19 Ky. Law Rep. 1613; Milburn vs. Jackson, 21 Ky. Law Rep. 700; Deposit Bank of Carlisle vs. Stitt, 21 Ky. Law Rep. 671; Skinner vs. Lynn, 21 Ky. Law Rep. 185.

WILLIS and TODD for appellee.

We submit that if a money lender, or any person, taking a married woman's note, can shut his eyes to the facts, and then come into court and there say he did not know that the married woman was merely surety, it would be doing just what this court says it will not permit, viz: avoiding the Statute by a device.

There can be no doubt that Mrs. Tyler was merely surety on this note and was so regarded in fact, by everybody that had any connection with the transaction.

Hart vs. Bank of Russellville, 31 Ky. Law Rep. 338; Morehead vs. Citizens Deposit Bank, 113 S. W. 501; Black vs. McCarley's exor, 31 Ky. Law Rep. 1198; Hines vs. Hays, 26 Ky. Law Rep 967.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

John A. Middleton, as executor and trustee of the estate of R. Swearingen, brought this action against appellee, Mary E. Tyler, upon the following paper, dated November 2, 1904: "Two years after date we promise to pay to the order of John A. Middleton, executor and trustee of R. Swearingen's estate, Twenty Five Hundred Dollars; for value received; with interest at the rate of six per cent. per annum from date until paid; said interest to be paid as it accrues on January 1st, and July of each year, and if not so paid then the principal as well as the interest shall become due, payable and collectible. (Signed) Mary E. Tyler.  Ernest Tyler."  For answer the appellee, Mrs. Tyler, admitted signing the note, but averred that at the time she signed the same she was a married woman, the wife of Ernest Tyler; that she signed the note as his surety, and not otherwise; that she was never the principal in the note and received no part of the proceeds or effects therefrom, but that Ernest Tyler received the whole of the proceeds.  She therefore asked that the petition be dismissed.  A reply controverting the answer completed the pleadings.

In order to present fully the facts so that the correctness of the instruction given may be tested and the law as we understand it properly applied, we will relate them with some detail.

Mrs. Tyler testified: That when she signed the note sued on she was the wife of Ernest Tyler, who died in 1907, previous to the institution of this suit. That

she had never had any conversation with Mr. Middleton respecting the loan of the money evidenced by the note. Asked, "Did you ever authorize your husband or anybody else to borrow $2,500?" She was permitted, over the objection of the plaintiff, to answer, "No, sir." She said that the note sued on was brought to her by her husband, and that some days before, she signed a note written by her husband for a like amount payable to Mr. Middleton, but that her name to the first note was signed following the name of her husband, who first signed it, and Mr. Middleton would not accept it. She identified the following check, which was given to her by her husband to indorse, and after indorsing it she handed it to him: "Shelbyville, Ky., Nov. 2, 1904. Farmers' and Traders' Bank. Pay to Mary E. Tyler and Ernest Tyler, or order twenty-five hundred ——— dollars. (Signed) John A. Middleton, Ex'r." On the back of the check there is writttn the names of "Mary E. Tyler" and "Ernest Tyler." Asked to "tell the jury whether or not she received any of the proceeds or got any of the benefit of that check?" she answered, "No, sir." But objection by plaintiff to this question and answer was sustained. She did not know what disposition was made of the proceeds of the check, as she had never drawn any money on it, nor received any of the proceeds, and had no bank account. She further said that she had never paid any of the interest credited on the note; nor had any person ever requested her to pay interest.

The cashier of the bank upon which the check was drawn testified that, when presented to the bank by Tyler, the check was put to his credit, and he checked out the money; that no part of it was put to the cred-

it of Mrs. Tyler, nor did she draw any of it out. He further testified that he would not have paid the check or placed the amount of it to the credit of Mr. Tyler except for the fact that the name of Mrs. Tyler was indorsed on it. This was all the evidence introduced on behalf of Mrs. Tyler.

John A. Middleton, the plaintiff, testified that he prepared the note sued on at his office, and then delivered the note to Ernest Tyler, who shortly thereafter returned it to him with the signature of Mrs. Tyler, who was not present when the note was written or delivered to her husband. He stated that for a number of years he had been executor and trustees of the estate of Reuben Swearingen, and that as such fiduciary he kept in his own handwriting an account in a book of money loaned, collected, and distributed by him as such fiduciary; and over the objection of the defendant he was permitted to read from the book the following entry made in his own handwriting: "Nov. 2, 1904.  By amount loaned Mrs. M. E. Tyler, $2,-500.00." He further said that the interest was paid on the note by Ernest Tyler. Asked, "To whom did you loan the $2,500, did you give the credit to Mrs. or Mr. Tyler?" he answered: "I gave the credit to Mrs. Mary E. Tyler. It was indorsed by Ernest Tyler, and I regarded both of them as good." He was asked: "State whether or not when you loaned this money to Mrs. Tyler you knew that a married woman could not bind her estate by going as surety upon a note." To this question objection was sustained, and an avowal made that the witness if permitted to answer would state that he knew the law to be that a married woman could not go security for her husband or any one else except by deed of

mortgage or other conveyance. It further appeared from this testimony that in noting in his book the payments of interest each entry read: "To amount, Ernest Tyler, $75.00."

J. F. Middleton, a son of John A. Middleton, testified that he was present on November 2, 1904, when Mr. Tyler and Mr. Middleton were talking about the loan of the money. To the question "whether Tyler made the application for the loan for himself or his wife" objection was made and sustained, and it was avowed that the witness, if permitted to answer the question, would state that the application was made by Mr. Tyler for his wife.

This was all the evidence offered. Thereupon the court, over the objection of the plaintiff, gave the following instruction: "Although the name of Mary E. Tyler appears as principal in said note, yet if the jury believe from the evidence that at the time of the execution of the note sued on she was the wife of Ernest Tyler, deceased, and that the money for which the note was executed was borrowed by the said Ernest Tyler and used by him in his individual business, and no part received by said Mary E. Tyler, or used for her benefit or by her individually, then in that event she is surety for her deceased husband, Ernest Tyler, and the jury will find for the defendant. Unless the jury so believe, they will find for the plaintiff $2,500, subject to the credits indorsed thereon." Passing for the present the question as to whether or not it was competent for Mrs. Tyler to state that she did not receive any part of the proceeds of the check, or any benefit therefrom, and the further question of the competency of Middleton to relate what took place between himself and Tyler with reference

to the loan, we will proceed to a consideration of the law.

Section 2127 of the Kentucky Statutes provides in part that: "No part of a married woman's estate shall be subjected to the payment or satisfaction of any liability, upon a contract made after marriage, to answer for the debt, default, or misdoing of another, including her husband, unless such estate shall have been set apart for that purpose by deed of mortgage or other conveyance. * * *" By section 2128 of the Kentucky Statutes the powers of a married woman are thus defined: "A married woman may take, acquire and hold property, real and personal, by gift, devise or descent, or by purchase, and she may, in her own name, as if she were unmarried, sell and dispose of her personal property. She may make contracts and sue and be sued, as a single woman, except that she may not make any executory contract to sell or convey or mortgage her real estate, unless her husband join in such contract; but she shall have the power and right to rent out her real estate, and collect, receive and recover in her own name the rents thereof, and make contracts for the improvement thereof. * * *" It will therefore be seen that under the statutes the only limitations upon the power of a married woman to make contracts are that, if she desires to sell, convey, or mortgage her real estate, her husband must join in the contract; and that for no liability assumed for the debt, liability, or misdoing of another can her estate be subjected unless it shall have been set apart for that purpose by deed of mortgage or other conveyance. A married woman, except in these particulars, has the privileges of a single woman. There is no inhibition whatever upon

her right to borrow money, or to make such disposition of the money so borrowed as she pleases. It follows from this as a matter of course that when a married woman borrows money, or assumes any liability, or becomes indebted, that her property may be subjected to the payment of the debt, unless the debt has been contracted as surety in some form or another. The Legislature, recognizing the ease with which married women might be induced to become surety for other persons, and especially for their husbands and desiring to protect them as far as possible from the financial misfortunes that too often befall sureties, inserted the provision that a married woman's estate could not be subjected to the payment of a debt or liability contracted as surety, unless she had first undertaken to pledge her estate for this purpose in the solemn and formal manner required in the execution of deeds or other instruments, or by the no less formal procedure of a contract accompanied by the writing intended to be pledged. Miller v. Sanders, 98 Ky. 535, 33 S. W. 621; Wirgman v. Miller, 98 Ky. 620, 33 S. W. 937; New York Life Ins. Co. v. Miller, 56 S. W. 975, 22 Ky. Law Rep. 230. But, notwithstanding this statute, numerous efforts with the consent of married women have been made to evade its provisions intended for their benefit and protection. Generally the effort has been made in the desire of the wife to assist her husband, or the mother to assist her children, by lending to one or the other the use of her name and credit. Several cases that we will hereafter notice involving questions like these have come before this court, and, although in many of them the money was advanced on the faith and credit of the married woman's name, and her desire

to thus give assistance was not questioned, we have uniformly held that the willingness of a married woman to become surety would not be permitted to defeat the statute enacted for her protection. In every instance in which it has been made to appear that the contract or arrangement was merely a device or scheme suggested, devised, or agreed to by a creditor to protect himself from probable loss, or by a lender to aid a person in procuring money with the assistance of the married woman's name as principal when the lender knew she was really the surety and the money was not paid to her, we have interposed to save from her own lack of judgment and discretion the married woman. But, on the other hand, we have never attempted to impair or nullify the statute conferring upon a married woman the right to make contracts or borrow money and do with it as she pleased. The court has never attempted to restrain in any way the disposition that a married woman might make of money lent to her as principal. It would be a foolish and impracticable thing for courts to undertake to restrain or limit a married woman in the control or disposition of money or property she had the right to pledge her credit to obtain. When the transaction by which the married woman obtains money is fair on its face is not an effort to evade or avoid the statute, and the money for which the note is executed is paid to her, the courts will not inquire further into the incident or concern themselves about what the married woman does with the money so obtained. As said in Third National Bank of Louisville v. Tierney, 110 S. W. 293, 33 Ky. Ky Law Rep. 418: "The statute was not designed to prevent a married woman from borrowing money or to deny

her the right to discharge her husband's debts or to do with her money as she pleases. Nor are the rights of the lender affected or prejudiced by the disposition made by the wife of the money borrowed upon her note, provided the transaction is not a subterfuge or device to evade the statute or a scheme to procure the obligation of the wife as surety for her husband or another.''

In the case before us it is manifest that Middleton made no effort to evade or avoid the statute. Tyler at the time of the execution of the note was solvent. He did not owe Middleton anything. In no manner or form, directly or indirectly, did Middleton derive any benefit or advantage from the lending of the money other than the interest that was agreed to be paid. There is no evidence whatever that Middleton had any desire to favor Tyler by lending the money, or that with this purpose in view he procured him to produce a note with Mrs. Tyler's name first upon it. In short, the acceptance of the note and the lending of the money was an ordinary, legitimate business transaction. Middleton, as trustee, had money to lend, and the Tylers—it is immaterial which—wanted to borrow it. Middleton did not consider it a safe business proposition to lend the money on the name of Tyler alone, although he was solvent, and required him to produce a note with the name of Mrs. Tyler signed on it first, with Tyler's name as surety. The fact that Mrs. Tyler could not bind her estate as surety was known to Middleton, and hence he required a note with the name of Mrs. Tyler signed first and his name as surety. It is true that the arrangement of the names on the note does not conclusively establish the fact as to who is principal and who is surety,

as it may be shown by evidence that the person whose name is first signed is a surety, and the person whose name is last signed is principal, but, generally speaking, and in the usual commercial transactions, the first signer is regarded as the principal. As said in Hart v. Bank of Russellville, 105 S. W. 934, 32 Ky. Law Rep. 338: "Ordinarily it will be presumed that the name appearing first on a note as an obligor is that of the principal debtor, but this presumption may be overthrown by the facts of the case, or the conduct of the parties themselves, and it is admissible for one, whose name appears first, or above that of another on a note, to prove that his relation to the obligation is nevertheless that of a surety, and this he may do by parol testimony. Lewis v. Harbin, 5 B. Monroe 564; Emmons v. Overton, 18 B. Monroe 643; First National Bank of Gaines, 87 Kentucky 601, 9 S. W. 396; Skinner v. Lynn, 51 S. W. 167, 21 Kentucky Law Reporter, 185." The check was made payable to both of them. It was not available until indorsed by both. The mere fact that the check was delivered by Middleton to Tyler did not authorize, nor indeed permit, Tyler to obtain the money upon it until his wife had first indorsed it. When the check was delivered to her by her husband, and she wrote her name on the back of it, thereby giving it commercial and trading currency and value, and handed it to her husband to do with as he pleased, it was her act, and not the act of Middleton, that transferred the title of the check to Tyler, and gave him the power to dispose of the proceeds. For all practical purposes the check was made payable to Mrs. Tyler alone because until indorsed by her it had no trading or commercial value. If the money

was used by Tyler in his individual business, it was because Mrs. Tyler desired or permitted him so to do and, that she had the legal right to do this, cannot be doubted. If she did not receive any part of the money realized from the check, it was because she gave the check to her husband presumably to do with as he pleased. Under these facts, it seems to us not to be an important or controlling question in the case that the money obtained upon the check was used by Tyler in his individual business, and that Mrs. Tyler did not receive for her own benefit any part of the money, and therefore the court erred in giving to the jury the instructions offered by appellee.

The instruction given by the court is a substantial copy of the instruction approved by this court in the case of Black v. McCarley's Ex'r, 126 Ky. 825, 104 S. W. 987, 31 K. L. R. 1198, but the facts of that case were very different from the facts of the one we are considering. It is shown by the opinion of the court in the Black Case that the note sued on was signed first by Thomas N. Black, the husband, then by Mary N. Black, the wife; her name being followed by that of I. Biddle Black. The check given for the amount of the note was made payable to Thomas N. Black, the husband, who used it in his business. There was no evidence even tending to show that the money was loaned to Mrs. Black or advanced on the faith and credit of her name. The court said: "The name of Thomas N. Black appears first on the note. There is no evidence whatever tending to show that his wife signed the note as principal, or authorized him to receive the proceeds realized from it, or that she received any part of the proceeds, or that she ever occupied any attitude other than that of a surety in the

note.   In the case before us there is some evidence
tending to show that Mrs. Tyler signed the note as
principal, and the uncontradicted evidence is that the
check was made payable to her as well as her husband,
and that she indorsed the check and delivered it to her
husband, thereby authorizing and enabling him to
collect and receive the proceeds.   Under the facts of
the Black Case, it was proper to   instruct   the   jury
that if the money for which the note was executed was
borrowed by Black and used by him in his individual
business, and no part of it received by Mary N. Black
or used for her benefit or by her individually, for the
purpose of testing the question whether or not she
was the surety of Thomas N. Black. In the case before
us the name of Mrs. Tyler appears first on the note
and her husband was enabled to obtain the proceeds of
the note by reason of her indorsement of the check.   In
Hines & Co. v. Hayes, 82 S. W. 1007, 26 Ky. Law Rep.
967, relied upon by appellee, although the facts are
very similar to the facts in the case at bar, the court
said: ''As a matter of fact, however, the bank did not
know Mattie E. Hayes in the transaction, and had no
comunication with her on the subject of the indebted-
ness; she lived some fourteen miles away, and the
terms of the contract were arranged through the son,
it being assumed that as her name was signed first on
the note, therefore she was the principal; in fact,
however, the debt really and technically was that of
Forest L. Hays.   *   *   *   The evidence shows with-
out doubt that the note to the Warren Deposit Bank
was a debt of Forest L. Hays, and was known to be
so by the bank.   The signing by the mother, M. E.
Hays, of the note first, and placing the proceeds to
her credit, was a mere technical arrangement to avoid

the effect of the statute prohibiting married women binding themselves as sureties''—thus making it appear that the arrangement was a mere device and scheme to evade the statute.

In Hart v. Bank of Russellville, 105 S. W. 934, 32 Ky. Law Rep. 338, in which a married woman defended a suit brought against her upon the ground that she was only the surety of her husband, the facts were that the husband, desiring to borrow $500, prepared a note for that amount, to which he procured his wife's signature above his own, and this note he forwarded by mail with a letter to the bank requesting that it be discounted. It was promptly discounted and its proceeds placed to the credit of the husband upon the books of the bank, or held subject to his order and applied to the payment of a draft drawn by him upon the bank in which the deposit was made. The wife received no part of the proceeds of the note, all of it being checked out by the husband, who testified that the note was executed for his benefit, and that he received the proceeds. Nor was there any evidence offered in behalf of the bank. In holding under the facts that the wife was only the surety in the note, the court said: ''In transactions of this kind the courts must look to the substance, and whatever the parties themselves may designate or name the undertaking of the wife, if in fact it be an attempted assumption by her of the debt of another, she must be held not liable unless she binds herself in the statutory way. Any other course will speedily result in a nullification of the statute.'' In Planters' Bank and Trust Company v. Major, 25 Ky. Law Rep. 702, 76 S. W. 3331, suit was brought by the bank against Kittie L. Mayor and her husband, Newt. S. Mayor, to re-

cover on two notes, one for $1,000 and the other for $1,500. The wife pleaded that she was the surety of her husband. It appears from the facts stated in the opinion that, when the $1,500 note was negotiated to the bank, the husband's account was over $300 overdrawn, and he had an overdue note there amounting to nearly $1,000, and the entire proceeds of the note were used to pay off the old note, or placed to his credit in the bank, and checked out by him. When the $1,000 note was made, the husband's account with the bank was overdrawn by more than $500, and the proceeds of the note were placed to his credit in the bank to extinquish the overdraft. The court said: "It is perfectly evident that her name was placed first on the note simply to evade the operation of the statute, which made the note void as to her if she signed as surety." In Milburn v. Jackson, 52 S. W. 949, 21 Ky. Law. Rep. 700, Deposit Bank of Carlisle v. Stitt, 107 Ky. 49, 52 S. W. 950, and Postell v. Crumbaugh, 66 S. W. 830, 23 Ky. Law Rep. 2193, it was attempted to hold married women responsible upon notes executed in satisfaction of a debt due by their husbands, respectively, but the court held that this could not be done. In the Tierney Case, supra, Tierney was indebted to the bank in the sum of $3,500, and proposed to the bank that it accept his wife's note in lieu of his. This proposition was accepted by the bank, and Tierney brought to it a note signed by his wife for $3,500, and also checks drawn by her upon the bank for the proceeds of the fund when it should be placed to her credit. The notes and checks were delivered to the bank, the note discounted, and the proceeds, less the discount, placed to the credit of Mrs. Tierney on the books of the bank. Thereupon

the checks she had drawn on her account payable to the bank were applied to the payment of the note of her husband, and they were delivered to him. Under these facts it was held that the wife in assuming the debts of the husband became in effect a surety and under the statute was not liable. The case of Farmers' Bank of Wickliffe v. Wickliffe, (decided January 12, 1909) 114 S. W. 1189, 131 Ky. 787, was a suit to subject to the payment of a note signed by Mrs. Beck and her husband insurance money to which she was entitled. It appeared from the evidence that she signed the note as surety for her husband, and that he alone received the proceeds; that, although her name appeared above that of her husband, it was so written at his request and for his accommodation; and that the cashier of the bank who took the note knew that the husband was the only person to be benefited by its execution, and the proceeds of the note when discounted in the bank were placed to the credit of the husband and checked out by him. The court said: "The arrangement of the names on the note was a mere device to avoid the statute and released the wife."

In all the cases written by this court releasing the wife from liability, it will be found that the facts showed that the obtention of the signature of the wife as principal was a scheme or device to evade the statute, or that in fact the husband was the real principal and sole beneficiary and received from the lender the money. We know of no case in which the wife has been relieved of her obligation to pay a debt voluntarily contracted by her, where the transaction was legitimate and the money paid to the wife, and there was no evidence of an attempt to evade the statute for the benefit of the lender of the creditor of the

husband.   Nor is it necessary that the wife should
herself in person make the application for the loan,
or that the money should be paid directly to her, or
the check be drawn in her name alone and handed to
her.   On the contrary, it has been ruled that the wife
as principal in the note may constitute the husband
her agent, and if he delivers the note signed by her
to the payee, and the check for the proceeds is made
payable to the wife, or the money is paid to her, or the
amount of the check placed to her credit, and the
transaction in other respects free from a purpose to
evade the statute, the wife will not be allowed to defeat
the payment of the debt upon the ground that she
was merely the surety, although as a matter of fact
she may not have received the use or benefit of any
part of the money.   In Thompkins v. Triplett, 110
Ky. 824, 62 S. W. 1021, 96 Am. St. Rep. 472, a case in
all substantial particulars identical with the one we
are considering, the facts were these:   Triplett ap-
plied to Tompkins for the loan of $250. He refused to
loan it to him, but told him he would loan it to his wife.
Thereupon Triplett procured a note with his wife's
signature first and his second thereon, and delivered
it to Tompkins.   In holding the wife liable, the court
said:   "In this case Tompkins refused to loan the
husband the money because he was insolvent, but was
willing to loan it to his wife which he did.   After
Tompkins' refusal to loan the money to him, he
brought the note to him purporting to have been first
signed by the wife, and then by himself.   The note im-
ported that the wife was the principal, and Tompkins
believed that she was, and loaned his money upon the
faith that she was the principal in the note.   The court
knows and Tompkins presumably knew, that the usual

way of signing obligations by principal and surety is
for the principal to sign his name first on the note. To
present a note as signed as in this case to any one, he
would at once conclude that the person whose name
appeared to have been first signed to it was principal.
Mrs. Triplett made her husband her agent to deliver
the note to Tompkins and receive the money. She
was bound by the representations he made as her
agent. The testimony of Tompkins is uncontradicted
that he gave the credit to the wife, and the note was
delivered to him with the representation that she was
the principal in the note. A married woman is author-
ized under the present law to contract as a feme sole
in the matter of borrowing money, and her husband
can act as her agent in doing so. When the wife de-
livered the husband the note, she made him her agent
to deliver it and receive the money on it. When the
husband represented that she was the principal on
the note, he was acting within the apparent scope of
his authority, and she is bound by what he said and
did." To the same effect is Deering & Co. v. Veal,
78 S. W. 886, 25 Ky. Law Rep. 1809.

The argument is made for appellee that Tyler in
delivering the note to Middleton and in receiving
the check was not acting as agent of his wife; but this
is not sound. When Mrs. Tyler signed her name to
the note and gave it to her husband, she constituted
him her agent, and authorized him to act for her, and
this she had the legal right to do. The transaction
speaks for itself, and shows on its face that Tyler in
delivering it to Middleton was acting as the agent of
his wife, and, as her name was signed to it first, she
was apparently and presumptively principal.

We also think it was competent for Mrs. Tyler as a

witness to state that she did not receive any part of
the proceeds of the note.   The fact that Mr. Tyler was
dead did not under the Code exclude her from testify-
ing to any fact that she might have testified to if
Tyler had been living; but it was not competent for
Middleton to relate conversations or transactions with
Tyler, who in this matter was acting as the agent of
his wife; as, when the transaction in controversy is
had with an agent, a party cannot testify concerning
it if the agent be dead when the testimony is offered
to be given.   Harpending's Ex'rr v. Daniel, 80 Ky.
449; Breckinridge v. McRoberts, 47 S. W. 454, 20 Ky.
Law Rep. 699; Maxey v. Bethel, 64 S. W. 746, 23 Ky.
Law Rep. 1085; Mutual Life Ins. Co. v. O'Neil, 116
Ky. 742, 76 S. W. 839.   But as to any pertinent ma-
terial fact that Middleton knew independent of what
occurred between himself and Tyler he was qualified
to testify concerning; as, for instance, that Tyler was
solvent, and that he knew a married woman could not
become the surety of another.   And so it was admis-
sible to show by any person who was present what
took place between Middleton and Tyler—who was the
agent of his wife—in respect to the execution of the
note.   Upon a return of the case, if the evidence is
substantially the same as on the trial from which this
appeal is prosecuted, the court should direct the jury
to return a verdict for Middleton.

Wherefore, the whole court sitting, the judgment is
reversed, with directions for a new trial in conformity
with this opinion.