## Thomas v. Boston Banking Company.

(Decided February 18, 1914.)

### Appeal from Nelson Circuit Court.

1. Husband and Wife—Married Women—Contracts of—Liability.— Under Section 2128 of the Kentucky Statutes, and subject to the limitations therein contained, a married women has the right to make contracts and bind her property therefor as if she were un- married; and if she receives the money upon a note signed by herself and her husband, she is liable therefor, since it is really her contract and for her benefit.

2. Husband and Wife—When Wife Liable on Note, Although She Signed It As Surety for Her Husband.—Where a husband and wife jointly executed a note to a bank for $1,500.00 and used the proceeds thereof in part payment of the purchase money for a house and lot which was conveyed to the wife, she is liable on the note, although she signed it as surety for her husband.

3. Husband and Wife—Joint Note of—Proceeds Usea in Payment of Lot Conveyed to Wife—What Defense Wife May Not Make.— Where the proceeds of a joint note of husband and wife were used in part payment of the purchase price of a house and lot conveyed to the wife, she being surety on the note, she will not be allowed to say that the proceeds of the note were paid to her in discharge of a prior debt which her husband owed her.

KELLEY & CHERRY for appellant.

JOHN A. FULTON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

In September, 1903, Dr. C. C. Thomas and his wife, Nannie B. Thomas, the appellant, executed to the appellee Banking Company a note for $1,500. The note was renewed by the same parties a number of times, the last renewal being in September, 1907. On the last renewal note, which was executed for $1,751, this suit was brought by the Banking Company against Mrs. Thomas, it being conceded, however, that she is only liable, if at all, for $1,500, the amount of the original note.

For answer, Mrs. Thomas pleaded that she was a married woman at the time of the execution of all the notes, and was only the surety of her husband, Dr. Thomas in the original note and each of the renewals thereof; that she received no consideration for the execution of any of the notes; and she relied upon her coverture as a bar to any recovery against her.

The case went to trial before a jury, and at the conclusion of all the evidence, the trial court directed a verdict in favor of the Banking Company for $1,500, with interest from September, 1907; and from the judgment on that verdict this appeal is prosecuted.

To determine the law of the case it is necessary to have a clear understanding of the facts, which may be stated substantially as follows:

In May, 1903, Dr. Thomas and Mrs. Thomas sold to Dr. Hyatt a house and lot for $2,300. One thousand dollars of this sum was paid in cash to Dr. Thomas and two notes were executed by Dr. Hyatt to Dr. Thomas for $1,300, the remainder of the purchase money. In September, 1903, Dr. Hyatt sold this property back to Dr. Thomas for $2,800. Thirteen hundred dollars of the consideration was paid by the surrender of the two notes aggregating the amount that Dr. Hyatt had executed to Dr. Thomas in May, and the remainder of the consideration ($1,500) was paid to Dr. Hyatt in cash at the time of the sale. Upon the payment of the $1,500 the property was conveyed by Dr. Hyatt to Mrs. Thomas; and it may here be remarked that she afterwards sold this property for something more than was paid for it.

For the purpose of raising the $1,500 which was paid to Dr. Hyatt, Dr. Thomas and Mrs. Thomas executed their note for $1,500 to the Banking Company as above recited, and the bank loaned the money. Mrs. Thomas testifies, without contradiction, that she had nothing whatever to do with negotiating this loan from the Banking Company, and that when her husband brought to her the note for $1,500 with his name signed to it, she signed her name under his on the note, as surety; and she is corroborated in the statement that she signed it as surety by the evidence of her son, who was present when she signed the note.

Mrs. Thomas testifies, without contradiction, that in September, 1903, when this conveyance was made, her husband owed her about $1,900 on account of debts and

obligations created prior thereto; and that the $1,500 obtained from the Banking Company and invested, in the manner stated, in this house and lot, was paid to her by her husband in part satisfaction of his indebtedness to her.

It further appears that the Banking Company kept a register of notes and bills having two columns, one headed "drawer or maker" and the other headed "drawer or endorser;" and in entering this note on the register of the bank the name of Dr. Thomas appeared in the column headed "drawer or maker" and the name of Mrs. Thomas in the column headed "drawer or endorser." And the cashier testified that it was usual to put in the first column the name of the person who signed the note first and in the second column the name of the persons who signed it afterwards, either under the name of the first signor, or on the back of the note.

It is further shown that when Dr. Thomas presented the note to the bank signed by himself and Mrs. Thomas the proceeds of the note for $1,500 were placed to the credit of Dr. Thomas in the bank, and he at once gave his check upon it for that amount to Dr. Hyatt

On these facts it is strongly contended by counsel for the Banking Company that, as Mrs. Thomas received the entire consideration for which the note was executed, she is to be treated as a principal or joint obligor so far as the Banking Company is concerned, and that it is immaterial that she signed the note merely as the surety of her husband.

On the other hand, it is argued for Mrs. Thomas that, although the $1,500 was invested in the house and lot, it was, as the evidence shows, a payment made by her husband on debts that he owed her; and this being true, the fact that in discharge of his indebtedness to her he invested the money for her benefit in the house and lot, does not estop her from pleading her coverture to defeat liability on the note, or bring her within the rule that where the wife receives the consideration she is to be treated as a principal, or joint obligor.

Putting aside, for the moment, the question of the indebtedness of Dr. Thomas to his wife, and assuming that the $1,500 was not paid to her on account of this indebtedness, it is, of course, plain that she received the entire consideration for which the note was executed, as a gift from her husband; and this being so, she cannot defeat

her liability thereon on the ground that she was merely the surety of her husband, for, although section 2127 of the Statutes provides, in substance, that a married woman shall not be liable upon a contract in which she is merely the surety, this provision does not exempt her from liability if she receives the consideration for which the note was executed. Her coverture only protects her when she is a surety and has not received the consideration. If she has received the consideration, or any part thereof, she will be treated as the principal or joint obligor to the extent of the amount received by her.

Therefore, since the proof conclusively shows that Mrs. Thomas received the full consideration for which the note sued on was executed, the trial court properly directed a verdict against her, unless it be there is some merit in her defense that the house and lot were conveyed to her by her husband in payment, or part payment, of his indebtedness to her.

But to give the transaction the effect claimed for it by Mrs. Thomas would place an unnatural and forced construction thereon. The purpose of section 2127 of the Statutes above referred to was to protect the wife's property from being subjected to the payment of the debts of a third person, including her husband; not to protect her property against her own contracts or liabilities.

Under section 2128 of the Kentucky Statutes a married woman now has the right to make contracts, and bind her property therefor as if she were unmarried; and if she receives the money upon a note signed by herself and her husband, she is liable therefor as principal, since it is really her contract and for her benefit. Black v. McCarley, 126 Ky., 825; Hart v. Bank of Russellville, 127 Ky., 424.

In speaking of the rights and powers of a married woman under sections 2127 and 2128 of the Kentucky Statutes, in Swearingen's Exor. v. Tyler, 132 Ky., 465, we said:

"It will therefore be seen that under the Statutes the only limitations upon the power of a married woman to make contracts are that, if she desires to sell, convey, or mortgage her real estate, her husband must join in the contract; and that for no liability assumed for the debt, liability, or misdoings of another can her estate be sub-

jected unless it shall have been set apart for that purpose by deed of mortgage or other conveyance. A married woman, except in these particulars, has the rights of a single woman. There is no inhibition whatever upon her right to borrow money or to make such disposition of her money so borrowed as she pleases. It follows from this as a matter of course that when a married woman borrows money, or assumes any liability, or becomes indebted, that her property may be subjected to the payment of the debt, unless the debt has been contracted as surety in some form or another."

See also Third National Bank v. Tierney, 128 Ky., 845.

Accordingly, in Tompkins v. Triplett, 110 Ky., 824, where the note was signed by the wife and by the husband in the order named, the credit being given to her, she was held liable, although the note was delivered to the bank by the husband, as her agent.

Deering v. Veal, 25 Ky. L. R., 1809, 78 S. W., 886, is to the same effect.

If Mrs. Thomas alone had signed this note as an original transaction, and had received the proceeds thereon, she had the right under the doctrine laid down in Tompkins v. Triplett, *supra,* to apply the proceeds to any purpose she might have seen fit; and the fact that her husband joined her in the note sued on, and applied the proceeds to the payment of her property, is in no essential way a different transaction. The wife is only released from liability upon an unsecured note when the proceeds are applied by the creditor to the discharge of the husband's debt; but not where the proceeds are applied wholly to the payment of the wife's debt.

In the case at bar the proceeds of the note sued on were applied directly to the satisfaction of the cash payment due Dr. Hyatt; Mrs. Thomas obtained the sole and full benefit of the entire proceeds of the note; and, that being true, it would be a perversion of the law to sustain her contention that it was a payment to her upon a prior indebtedness which her husband owed her. Clearly the payment was a part of the land transaction with Dr. Hyatt.

It cannot be said that Dr. Thomas applied this $1,500 to the payment of his own debt; on the contrary, the plain and every-day effect of the transaction was that it was

applied to the buying of the property for Mrs. Thomas. We must give the transaction its ordinary and usual effect, one that is usually understood by the trading public, rather than an indirect and strained construction.

The money was borrowed and used for the purpose of making the cash payment to Dr. Hyatt; and as Mrs. Thomas was the sole beneficiary under the deed from Dr. Hyatt, her husband was in reality her surety. If Mrs. Thomas had borrowed this money from the bank upon her own note, clearly she would have been liable. The effect of the transaction before us is the same as if she had borrowed it upon her own note; and since she obtained the entire benefit of the note by a direct payment of the proceeds to Dr. Hyatt in payment for the property, she will not be allowed to say the proceeds were paid to her for a different purpose, or in discharge of some other debt.

The judgment was right, and it is affirmed.