## Peoples Bank v. Bowling et al.

Oct. 11, 1938.

W. A. STANFILL and L. E. HARVIE for appellant.

J. B. EVERSOLE and J. MATT DIXON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The Peoples Bank, as successor of the First State Bank of Vicco, brought this suit against J. T. Bowling for the discovery and subjection of property to satisfy a judgment after a return of "no property found" on an execution issued thereon. Section 439, Civil Code of Practice. Frances Mize's guardian and the Great American Indemnity Company were served as garnishees. Issues were joined upon the answers of the garnishees and the intervening petition of Mrs. Elizabeth D. Bowling, wife of J. T. Bowling. The plaintiff pleaded that whatever claim Mrs. Bowling had to the fund involved was void as having been created without consideration and for the purpose of hindering and delaying the defendant's creditors. Then Bowling answered denying every allegation of the petition and asserting that the pleaded judgment and execution upon which the suit was based were void because he had not been before the court. He also pleaded the absence of any right of the plaintiff to the fund sought to be subjected.

Then the plaintiff, by amended petition, pleaded al-

ternatively that if it should be held that the judgment and execution were void it was entitled to a judgment on the original obligation. A cause of action thereon was set up and another order of attachment issued following the course of the first one. See Ballou v. Skidmore, 132 Ky. 342, 113 S. W. 441. To this Bowling pleaded that he was surety on the note thus sued on and was released from liability under the seven-year statute of limitation. Section 2551. A reply completed the issues.

Oral evidence was heard by the court. He ruled that: (1) The original judgment was void; (2) Bowling was surety and was released; and (3) that the transfer of the fund to Mrs. Bowling was good. Accordingly the petition was dismissed. The plaintiff brings an appeal, contending that the judgment is erroneous in all three respects.

1. The First National Bank of Hazard sued Elizabeth Roberts, J. T. Bowling and R. B. Roberts on two notes originally for $10,000 each, but on which there appeared credits of $7,500, and asked the enforcement of a mortgage lien on certain property. The First State Bank of Vicco was made a defendant and called upon to assert whatever lien it had. Its pleading is styled only as "Answer." Nevertheless, it set up a note for $3,000 which had been executed to it by J. T. Bowling, Elizabeth Roberts and R. B. Roberts and secured by a lien on the same property. It prayed a personal judgment against its three co-defendants and an enforcement of its lien. Later the First State Bank of Vicco changed its name to "Peoples Bank" and it filed an amended pleading styled, "Answer and Counterclaim"; and later it filed an "Amended Answer, Counterclaim and Cross Petition," but in neither of these amended pleadings was any sort of recovery sought against the three co-defendants and they were not involved in the issues raised by the amendments. A trial was had in that case upon issues concerning priority of liens, a matter in which Bowling was not concerned. On October 5, 1929, a personal judgment was rendered by default in favor of Peoples Bank against Bowling, and Judge and Mrs. Roberts on its answer. This is the judgment now sought to be collected. No process was served on Bowling on the pleading of the Vicco bank. There is an order showing that Bowling agreed with the other

parties upon a special judge in the case since Judge Roberts was then the regular judge of the Perry circuit court, and another order which would perhaps bring Bowling before the court on this answer, except that it has never been signed by the special judge. The first proposition as to the validity of the judgment and execution, therefore, rests upon the two points—the construction to be put upon these orders in respect of their entering Bowling's appearance, and whether a personal judgment could be rendered upon the pleading merely denominated "Answer." Section 97, subsection 4, Civil Code of Practice, provides that:

> "A defendant shall not have judgment upon a set-off or counterclaim, unless the caption of the answer contain the words, answer and set-off, or the words, answer and counter-claim; but a misdescription in the caption, of the nature of the defendant's claims, shall not prevent him from having judgment; nor shall a plaintiff have judgment upon a counter-claim unless the caption of his reply contain the words, reply and counter-claim."

It is to be observed there is no reference to a judgment being denied upon a cross-petition without the pleading being so styled in the caption. In view of the conclusion we have reached on the second proposition, namely, that Bowling was not a surety and therefore that the plaintiff was entitled to a judgment against him for the debt on its amended pleading in this suit, we pass over the question raised as to the invalidity of the old judgment.

2. The $3,000 note given the First State Bank of Vicco, dated October 18, 1927, was a renewal of another. It was signed, first, "J. T. Bowling," and under his name, "Elizabeth Roberts." It was endorsed on the back, "R. B. Roberts." The note was secured by a mortgage on property which had been conveyed to J. T. Bowling and Elizabeth Roberts in 1922. They and Judge Roberts had executed the mortgage. Judge Roberts and his wife lived in this property and Mr. Bowling, a brother of Mrs. Roberts, who was then a single man, lived with them. He was then and is now a practicing attorney. No part of the note has been paid since the property mortgaged did not yield enough in the foreclosure proceedings to satisfy this lien, which was subordinate to others. The cashier of the bank testified that the money had been loaned to Bowling and Mrs.

Roberts, and so far as he knew it was not borrowed by Judge Roberts; but he did not know who got the money. The officers of the First National Bank of Hazard and the First State Bank of Vicco were the same, and the witness stated that the money was taken out of the Hazard bank and the mortgage retained by it.

Mr. Bowling testified that while the deed to the property involved was made to his sister and himself and title so remained, he never considered owning any interest in it. No explanation is given why the title was so held. At the time this note was made Judge Roberts was heavily in debt. He and his wife desired to purchase a home. His ability to borrow at the Hazard bank had reached its limit, but Mr. Morgan, the president of both banks and Bowling's law partner, advised arrangements could be made to get $3,000 from the Vicco bank "in my name." He signed the note at Mr. Morgan's request, but he never received any of the money. It went to purchase the home. Mr. Bowling further related that at that time he had money and did not need to borrow any. He signed the note as an accommodation to his brother-in-law and as surety only.

The deed to the property involved was dated July 14, 1922, while the original note was not given the Vicco bank until April 17, 1925. There was conclusive documentary evidence in the old record, which was made a part of this one, showing that the $3,000 was received by the Hazard bank as a credit on one of the two notes executed to it by the three parties long before this transaction. There is no evidence that either of the notes of the Hazard bank had been signed by Mr. Bowling as surety, nor any such claim made by him in the old suit thereon to which he was a party, admittedly before the court. We have, therefore, the signatures of two parties, Mr. Bowling and Mrs. Roberts, on a note, the proceeds of which went to pay, in part, a note upon which they were obligated or (according to Bowling) to buy property, the title to which was in their name and on which both executed at least two mortgages. The form of the note is entitled to consideration. As shown above, Mr. Bowling's name appears first and Mrs. Roberts' under it. Judge Roberts was an endorser. There is nothing on the face of it to indicate Bowling was a surety. The arrangement of names on a note does not conclusively establish the fact as to who is principal and

who is surety, as it may be shown by evidence that the person whose name is first signed is a surety and the person whose name is last signed is principal, but usually the first signer is regarded as the principal. Swearingen's Ex'r & Trustee v. Tyler, 132 Ky. 458, 116 S. W. 331. The reality of the transaction rather than the form of the instrument is controlling. Bank of St. Helens v. Mann's Ex'r, 226 Ky. 381, 11 S. W. (2d) 144. But the form of the note raises a prima facie presumption that the appellee whose name appears first was the principal. Hart v. Bank of Russellville, 127 Ky. 424, 105 S. W. 934, 32 Ky. Law Rep. 338; People's Bank v. Baker, 238 Ky. 473, 38 S. W. (2d) 225. The court is of opinion that the appellee did not sustain the burden resting upon him to prove that he was a surety on the note and, therefore, was entitled to be relieved upon his plea of limitations. Thomas v. Boston Banking Co., 157 Ky. 473, 163 S. W. 480; Baskett, Nichols & Norment v. Rudy, 186 Ky. 208, 217 S. W. 112; Redmon v. First National Bank of Paris, 256 Ky. 659, 76 S. W. (2d) 933.

3. Mr. Bowling represented Frances Mize, by her father as next friend, in a suit against the Great American Indemnity Company to recover of it as insurer of an automobile owner by whose negligence she had been injured, and recovered a judgment for $4,000. The judgment was affirmed June 19, 1936. Great American Indemnity Company v. Mize, 266 Ky. 232, 98 S. W. (2d) 290. This present suit on the return of nulla bona was filed June 22, 1936, and, as stated, Miss Mize's father as next friend and the Indemnity Company were served as garnishees. It was not until after the petition for rehearing in the Mize Case had been overruled, December 15, 1936, that the garnishees answered. We may go direct to the situation surrounding and the evidence relating to the attached fund which was Bowling's portion of the judgment as a contingent fee under employment as attorney. The sum, $1,389, was eventually paid into court to be held subject to its order.

Over the objections of the plaintiff, the court heard the testimony of both Mr. and Mrs. Bowling concerning the assignment or attempted payment of this fund to her. This was done notwithstanding the explicit terms of Section 606, Civil Code of Practice. He also heard some evidence of declarations of the parties which were clearly self-serving. In our consideration of the issue

as to the transaction being without consideration and a fraud upon the creditor, we shall ignore this incompetent evidence.

Mrs. Bowling was at the time and had been for several years deputy circuit court clerk, receiving a good salary. She had bought a library for her husband several years before for $500. She drew her own checks monthly for the payment of the household bills and lately paid her husband's office rent. The appellant questions the sufficiency of the evidence to show that there was an actual indebtedness owing Mrs. Bowling because her husband had been and is a good attorney, actively engaged in the practice, and who, according to his own evidence, had no need to borrow money several years before, together with the possibility that the wife was the bookkeeper of the family and handled the funds to which her husband had, at least, contributed. We think there is enough competent evidence to show that the appellee recognized a substantial indebtedness to his wife and for some time had purposed to repay her, with or out of the fee he expected to receive in the Mize Case. But here is a species of conveyance from a husband to his wife, hastily made upon the very reasonably assumed acquisition of the property, while he was heavily indebted to others. The burden was cast upon the appellees to show that it was for a valuable consideration without fraudulent intent. Dotson v. People's Bank, 234 Ky. 138, 27 S. W. (2d) 673. The evidence is meager, but it seems to the court, from a full consideration of it and all the circumstances, that it is sufficient to require that the conveyance or equitable assignment—if it be such in law and in fact—be held void as being within the provisions of Sections 1906 and 1908 of the Statutes.

The conclusion is that the trial court should enter a judgment in favor of the appellant upon its original obligation and award to the appellant the fund in controversy.

Judgment reversed.