CASE 3—INDICTMENT FOR UNJUST DISCRIMINATION—Nov. 22.

# Commonwealth v. L. & N. R. R. Co.

### APPEAL FROM GARRARD CIRCUIT COURT.

JUDGMENT DISMISSING INDICTMENT AND COMMONWEALTH APPEALS. REVERSED.

CARRIERS—UNJUST DISCRIMINATION—RECOMMENDATION OF RAILROAD COMMISSION AS PREREQUISITE TO INDICTMENT—CONSTITUTIONALITY OF STATUTE.

Held: Kentucky Statutes, sec. 819, to the extent that it provides that indictments against railroad corporations for unjust discrimination shall be made only upon the recommendation or request of the railroad commission, violates Const., sec. 217, prescribing a penalty for that offense "upon conviction by a court of competent jurisdiction," there being nothing in the Constitution to authorize the railroad commission or the Legislature to relieve any carrier from the penalty prescribed.

J. S. OWSLEY, JR., AND ROBT. J. BRECKINRIDGE, ATTORNEY GENERAL, FOR APPELLANT.

The indictment in this case charges appellee with a willful violation of section 215 of the Constitution. The indictment was dismissed by the lower court on the motion of appellee, upon the ground that it was not alleged that the railroad commission had recommended the finding of said indictment. The penalty for a violation of section 215 of the Constitution is prescribed in section 217, thereby, taking the two section to-

gether, making the Constitution self-executing, and no additional legislation is required to put the same into full force and effect, and in neither of said sections is there anything that hints or suggests that before the finding of an indictment for a violation thereof, a railroad commission should first meet, consult and recommend the indictment.

Counsel for appellee contends that section 819 of the Kentucky Statutes is applicable to this case, which we deny, and we contend that if said section was intended to apply to this case, it is unconstitutional and void.

BRECKINRIDGE & SHELBY AND WALKER D. HINES FOR APPELLEE.

### POINTS AND CITATIONS.

At the time of the adoption of the present Constitution, the exclusive jurisdiction to inaugurate prosecutions for unjust discrimination, by recommending indictments therefor, was vested in the railroad commission. 1 Acts 1889-1890, p. 25.

By section 209 of the present Constitution the railroad commission's existing jurisdiction was confirmed and continued.

The unjust discrimination prohibited by section 215 of the Constitution, and charged in the indictment in the case at bar, is the same, in substance, as the unjust discrimination prohibited by the Act of 1890. L. & N. R. R. Co. v. Com., 20 Ky. Law Rep., 1099.

Section 819, Kentucky Statutes, indicates a continuing legislative purpose that the commission shall inaugurate prosecutions for unjust discrimination growing out of violations of section 215 of the Constitution. L. & N. R. R. Co. v. Com., 22 Ky. Law Rep., 328.

As to statutory offenses the Legislature has unrestricted power to prescribe the manner in which prosecutions shall be instituted. While section 12 of the Constitution requires, for the citizen's protection, indictment by grand jury for an indictable offense, it does not prevent additional legislative restrictions for the citizen's protection. State v. Brecht, 41 Minn., 15; Ashurst v. State, 63 Ala., 120.

While section 217 of the Constitution prescribes penalties for unjust discrimination, it does not prescribe the method of instituting prosecutions, but leaves the Legislature to regulate that procedure as fully as it can regulate the procedure for purely statutory offenses.

But in any event section 209 of the Constitution distinctly confirms the jurisdiction of the railroad commission to inaugurate prosecutions for unjust discrimination.

The uniform policy of the State and the orderly procedure contemplated by section 217 of the Constitution require that these difficult, technical matters should be under control of the railroad commission, a constitutional tribunal erected for the very purpose of seeing that the laws as to railroads are faithfully executed, and therefore properly vested with extraordinary powers. L. & N. R. R. Co. v. Com., 21 Ky. Law Rep., 232.

If such indictments may be found at will by all the grand juries in the State, without guidance or control, railroads may for a single, honest mistake be absolutely confiscated by means of innumerable prosecutions based on separate shipments growing out of the one mistake.

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—REVERSING.

The indictment charges the appellee with the offense of unjust discrimination by willfully and knowingly violating the provisions of section 215 of the Constitution by hauling and transporting a car load of coal for S. T. Leavell from East Bernstadt, Ky., to Lancaster, Ky., for the price of $1.35 per ton, and that it transported for William Ward a car load of coal of the same class and kind as that hauled and transported for Leavell, but not upon the same conditions, for the same charges and same payment exacted and collected of Leavell, and that it demanded and received from Ward the price of $1.33 per ton for coal hauled him, and thereafter, in pursuance of previous agreements, did refund and pay back to him 33 1-3 per cent. of the sum previously paid by him to it, etc. Upon the motion of the appellee to dismiss the indictment, it was admitted that the railroad commission had never filed in the Garrard circuit, or any other court, any information concerning the acts or offense alleged in the indictment, or made any recommendation or request that the indictment should be found upon the information filed by it. The court sustained the motion and dismissed the indictment.

The question here is whether or not the grand jury was authorized to return the indictment in the absence of any action of the railroad commission. Certain sections of the Constitution relating to the question under consideration read as follows: Section 213: "All railroad, transfer, belt lines and railway bridge companies, organized under the laws of Kentucky, or operating, maintaining or controlling any railroad, transfer, belt lines or bridges, or doing a railway business in this State, shall receive, transfer, deliver, and switch empty or loaded cars, and shall move, transport, receive, load or unload all the freight in car loads or less quantities, coming to or going from any railroad, transfer, belt line, bridge or siding thereon, with equal promptness and dispatch, and without any discrimination as to charges, preference, drawback or rebate in favor of any person, corporation, consignee, or consignor, in any matter as to payment, transportation, handling or delivery; and shall so receive, deliver, transfer and transport all freight as above set forth, from and to any point where there is a physical connection between the tracks of said companies. But this section shall not be construed as requiring any such common carrier to allow the use of its tracks for the trains of another engaged in like business." Section 214: "No railway, transfer, belt line or railway bridge company shall make any exclusive or preferential contract or arrangement with any individual, association or corporation, for the receipt, transfer, delivery, transportation, handling, care or custody of any freight, or for the conduct of any business as a common carrier." Section 215: "All railway, transfer, belt lines or railway bridge companies shall receive, load, unload, transport, haul, deliver and handle freight of the same class for all persons, associations or corporations

from and to the same points and upon the same conditions, in the same manner and for the same charges, and for the same method of payment." Section 216: "All railway, transfer, belt lines and railway bridge companies shall allow the tracks of each other to unite, intersect and cross at any point where such union, intersection and crossing is reasonable or feasible." Section 217: "Any person, association or corporation, willfully or knowingly violating any of the provisions of sections two hundred and thirteen, two hundred and fourteen, two hundred and fifteen, or two hundred and sixteen, shall, upon conviction by a court of competet jurisdiction, for the first offense be fined two thousand dollars; for the second offense five thousand dollars, and for the third offense, shall thereupon *ipso facto*, forfeit its franchises, privileges or charter rights; and if such delinquent be a foreign corporation it shall, *ipso facto*, forfeit its right to do business in this State; and the attorney general of the Commonwealth shall forthwith, upon notice of the violation of any of said provisions, institute proceedings to enforce the provisions of the aforesaid sections." As plain as it can be expressed in the English language, section 217 prescribes the penalty for the violation of the above-named sections. It likewise prescribes that the penalty shall be inflicted upon conviction by a court of competent jurisdiction. For the first offense the fine is $2,000; for the second, $5,000; for the third the party found guilty shall thereupon *ipso facto* forfeit its franchises, privileges, or charter rights. The people of the State can, under forms of law, adopt a Constitution. It is the duty of the legislative, executive, and judicial branches of the government to follow its provisions. If a penalty for a certain offense is prescribed by the Constitution, the Legislature of Kentucky has no more

authority to alter or change it than the Legislature of any
other State in the Union.    It is as much without author-
ity to alter or change it as is the humblest citizen in the
State.    If it disregards it, it is as much incumbent upon
the courts of the State to so adjudge as it was the duty of
the Legislature to have followed it in the first instance.
It seems to us that courts should have no difficulty in un-
derstanding that if the Legislature attempted to fix a
penalty other than that prescribed by the Constitution, or
should attempt to provide that the question of guilt or in-
nocence should be determined by or made dependent upon
the will of any one other than a court of competent juris-
diction, the Legislature has transcended its authority.
When the constitutional convention said the conviction
should take place in a court of competent jurisdiction, it
meant it should be done by the course of procedure usually
pursued in such courts.    There is nothing in the Constitu-
tion which authorizes the railroad commission or the Leg-
islature to relieve anybody or a corporation from the pen-
alties prescribed for violations of sections 213, 214, 215,
and 216 of the Constitution.    These sections are self-exe-
cuting, and fully and sufficiently define what acts shall
constitute an offense under them, and prescribe the kind
of punishment that shall be inflicted in a court of compe-
tent jurisdiction.

It is urged that it was the well settled policy of the
State, before the adoption of the present Constitution, to
allow indictments to be found against common carriers
for unjust discrimination, etc., only upon the recommenda-
tion of the railroad commission; that the course of proce-
dure prescribed by the Legislature had the merit of uni-
formity by providing a standard by which the railroad
companies could be controlled in the adjustment of their

rates and classification.    Upon this question the court
does not take issue with the learned counsel for appellee.
If the provisions of the Constitution under consideration
were ambiguous, and of doubtful meaning, the well-settled
policy of the State in the particular mentioned might be
important to be considered by the court in its interpreta-
tion.    Our opinion is that the language employed in the
sections of the Constitution quoted leave no doubt as to
their meaning.    It will be observed that nowhere in sec-
tions 213-217, inclusive, is any reference made to the rail-
road commission, or to the right of any authority to con-
trol the prosecutions of courts of competent jurisdiction.
There is not a word or sentence in either section that sug-
gests that the constitutional convention intended that
such should be the case, or that any authority should sus-
pend, in whole or in part, a single provision or clause in
either of these sections.    It evidently thought it was prop-
er that a railroad company should receive, load, unload,
transport, haul, deliver, and handle freight of the same
class for all persons, associations, or corporations from
and to the same points, and upon the same conditions, in
the same manner, and for the same charges, and for the
same method of payment; and from the obligation to do
which it should not be relieved.    If there was any doubt
as to what sections 213-217, inclusive, meant, it would be
removed by section 218, which reads as follows:.    "It
shall be unlawful for any person or corporation, owning
or operating a railroad in this State, or any common car-
rier, to charge or receive any greater compensation in the
aggregate for the transportation of passengers, or of prop-
erty of like kind; under substantially similar circumstances
and conditions, for a shorter than for a longer distance

over the same line, in the same direction, the shorter being
included within the longer distance; but this shall not
be construed as authorizing any common carrier, or per-
son or corporation, owning or operating a railroad in this
State, to receive as great compensation for a shorter as
for a longer distance; provided, that upon application to
the railroad commission, such common carrier, or person,
or corporation owning or operating a railroad in this State,
may in special cases, after investigation by the commission,
be authorized to charge less for longer than for shorter
distances for the transportation of passengers, or proper-
ty; and the commission may, from time to time, prescribe
the extent to which such common carrier, or person or
corporation, owning or operating a railroad in this State,
may be relieved from the operations of this section." This
section is what is commonly known "as the long and short
haul" provision of the Constitution. It confers upon the rail-
road commission in special cases, after investigation, the
right to authorize a railroad company to charge less for the
long than the short distances, etc., and further author-
izes it from time to time, to prescribe the extent to which
a railroad may be relieved from the operations of the sec-
tion.    The fact that such a power was conferred upon the
railroad commission with reference to section 218 excludes
the idea that the constitutional convention intended that
it should have any such power to relieve railroads from the
operation of sections 213-217, inclusive.    It will be ob-
served that no penalty is prescribed by section 218 for its
violation, but a penalty is prescribed for the violation of
the other sections to which we have referred.    Those sec-
tions of the Constitution clearly manifest a purpose to
change the policy of the State existing previous to the
adoption of the Constitution.    The law then only allowed

Commonwealth v. L. & N. R. R. Co.

prosecutions to be begun upon the recommendation of the railroad commission. Had the Legislature intended that the railroad commission should have the authority to inaugurate or not, as it saw proper, prosecutions for the violations of sections 213-217, inclusive, it would have in express terms conferred that authority, and not simply have conferred that which exists by virtue of section 218. Whether it was wise or unwise for the constitutional convention to permit prosecutions for violations of the sections to which we have referred without the recommendation of the railroad commission, we are not called upon to determine. It is our duty, as well as that of common carriers, to obey the mandates of the Constitution; and simply because seeming hardships may follow the enforcement of constitutional provisions is not a sufficient excuse for a court to declare in effect that it will not enforce them. When courts fail to enforce the law, it can not be expected that the people will respect and obey it. Section 209, Const., reads as follows: "The powers and duties of the railroad commissioners shall be regulated by law; and until otherwise provided by law, the commission so created shall have the same powers and jurisdiction, perform the same duties, be subject to the same regulations, and receive the same compensation, as now conferred, prescribed and allowed by law to the existing railroad commissioners." When the constitutional convention said "until otherwise provided by law" the railroad commission shall have the same jurisdiction as then conferred by law, it did not intend to keep in force laws which were inconsistent with its self-executing provisions. When the convention provided that the railroad commission should be "regulated by law," it was not intended to confer upon the General Assembly the authority to pass

laws to regulate the railroad commission which would be
in conflict with it, and especially with its self-executing
provisions.    If the Constitution conferred the authority,
upon the General Assembly to give the railroad commis-
sion the right to control prosecutions under sections 213-
217, inclusive, then the lawmaking department of the State
is vested with power to nullify its provisions.    That was
not the purpose of the framers of the Constitution.    On
the contrary, they show, by the sections to which we have
just referred, that they were not even willing to leave to
the General Assembly the question of passing laws against
"unjust discrimination," or to designate the forum for
their enforcement, if passed, because section 215 defines
the acts which shall constitute the offense, and section
217 fixes the penalty, and designates courts of competent
jurisdiction to enforce it.

It is suggested that the statute which conferred upon
the railroad commission the right to say when a prosecu-
tion shall be inaugurated relates to the remedy, and that it
was competent for the General Assembly to enact it.    It
not only relates to the remedy, but wrests from courts ju-
risdiction to enforce the constitutional provisions.    The
power to say when a prosecution shall be inaugurated is
the power to say there shall be none.    The power to say
there shall be none is the exact equivalent of the power to
suspend the operation of the sections of the Constitution
here in question.    This court, in Louisville & N. R. Co. v.
Com., 105 Ky., 179 (20 R., 416), (48 S. W., 416,
43 L. R. A., 550), in speaking of certain sections
of the Constitution and of the statute, said: "And
operating in connection with section 217 of the Con-
stitution, it is final and self-executing.    It is therefore
manifest that, so far as sections 817 and 818 conflict with
sections 215 and 218, they are void, and, so far as the in-

dictment in this case lacks any statement of fact necessary
to constitute a complete offense under these two sections.
of the Constitution, it is defective."

The judgment is reversed for proceedings consistent
with this opinion.     **Whole court sitting.**

---

CASE 4—ACTION TO ENFORCE A JUDGMENT—NOV. 22.