## Salisbury, et al. v. Wellman Electrical Company.

(Decided January 26, 1917.)

Appeal from Boyd Circuit Court.

1. Witnesses—Competency.—A contractor who supervises his work is competent to prove its amount and value.
2. Appeal and Error—View of Premises by Jury—Discretion.— Whether a jury may view the premises is largely within the dis-

cretion of the trial court, and its action will not be disturbed unless the discretion has been abused. (Civil Code, Sec. 318.)

3. Husband and Wife—Married Women—Lien Upon Property.—Since the enactment of section 2128 of the Kentucky Statutes (Act of 1894), married women have the same power as unmarried women or men, to create liens upon their property, for its improvement; and, where a married woman accepts the material and work placed upon her property, the law implies a promise upon her part to pay for them.

4. Pleading—Variance Between—Allegations and Proof.—Under section 129 of the Civil Code, no variance between the pleadings and the proof is material, which does not mislead a party to his prejudice in maintaining his action or defense upon the merits.

5. Appeal and Error—New Trial.—No error committed during a trial is available upon appeal, unless it was relied upon as a ground for a new trial.

RICHARD D. DAVIS and S. S. WILLIS for appellants.

RUFUS S. DINKLE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellants, William G. Salisbury and E. J. G. Salisbury, his wife, own the Gaylord building on the southeast corner of Sixteenth and Greenup streets, in the city of Ashland. As originally constructed, the building contained two stories.

In May, 1914, the appellants put three additional stories on the buliding, thus making it a five story structure. In making these improvements the contract to do the electrical wiring and similar work, in the erection of third, fourth and fifth stories, was awarded to the appellees, Harlan P. Wellman and Haskell F. Wellman, doing busines as the Wellman Electrical Company, for the sum of $265.25.

Subsequently, appellants determined to make certain changes and additions in the first and second stories, and the appellees were employed to do that work without naming, however, any specific sum for which it was to be done.

The work was completed in November, 1914; and the parties having failed to agree upon a settlement, this action was filed on January 4th, 1915, by the appellees, seeking to recover the contract price of $265.25 for the improvements on the three upper floors; $440.06 as the reasonable price and value of the material and labor furnished in improving the two lower stories; and to en-

force a lien upon the premises to secure the payment of both sums.

The answer traversed the petition; and, by agreement, the issues thus raised were referred to a jury. Upon a trial, the court entered a judgment for the contract price of $265.25 for work upon the three upper stories which was not controverted by the proof, and submitted to the jury the issue raised as to the value of the work and material furnished on the first and second stories.

At the close of the proof the plaintiffs amended their petition by stating their cause of action in two paragraphs, the first paragraph declaring upon the express contract to do the work upon the three upper stories for $265.25, and the second upon an implied contract for $440.06, the reasonable value of the material and labor furnished upon the two lower stories.

The jury found for the plaintiffs in the sum of $440.06, the amount claimed, and from a judgment upon that verdict the defendants appeal.

While the appeal is from the judgment as a whole, which involves both sums sued for, the argument and grounds for a reversal relate solely to errors committed in connection with the recovery of the $440.06 for material and labor upon the first and second stories.

Appellants assign four grounds for a reversal: (1) That the verdict is not sustained by sufficient evidence, and is contrary to the weight of the evidence; (2) that the court erred in refusing to permit the jury to view the work done by the plaintiffs; (3) that the court erred in submitting the case to the jury as to Mrs. Salisbury; and, (4) that there was a material variance between the pleadings and the proof of the plaintiffs.

1.   As above stated, there is no controversy here as to the contract for wiring the three . top stories  for $265.25. The court did not submit that question to the jury because there was no evidence tending to dispute the contract, or the work done under it. After the three top stories had been completed, however, it was decided to put in a conduit service, and in doing this the wires were placed in small pipes for a distance, leading from the corner of the building to the hallway. In doing this work certain wiring and repairs became necessary in the first and second stories. The account filed with the petition sets forth each item of work done and material furnished and the charge therefor, aggregating $440.06. Appellants

insist that this extra work was of little or no magnitude, and that a bill therefor for $440.06, which is nearly $200.00 more than the contract price for the work in the three upper stories, is exorbitant upon its face. And, in this connection, it is insisted that appellees failed in their proof to substantiate the charges. The argument is that the plaintiffs failed to show by competent proof, what work was done. This contention, however, is based upon the fact that Harlan P. Wellman, one of the plaintiffs, testified that his workmen would turn in at the end of each day tickets or slips showing what material had been used and the time the men had worked, and that these tickets were delivered to the bookkeeper, who charged them against the appellants; that Harlan P. Wellman did not know what had been done, and was not a competent witness to show what had been done; and that the bookkeeper did not testify.

The proof, however, further shows that Harlan P. Wellman had immediate supervision of the work, and visited the building every day, spending from one to two hours each trip in supervising and directing the work. He testified specifically to the several items of the account sued on showing that he kept in touch with the work, and personally knew that the account correctly showed the amount of the material and labor used in the building. He was corroborated by Dawson and Williams, two of his workmen.

When Harlan Wellman had direct supervision of the work and personally knew what had been done under his direction, it was competent for him to show those facts. The bookkeeper knew nothing about the work; she merely entered in the book the items shown by the slips returned to the office. But Wellman spoke from personal knowledge. He did not have to do the work himself or make the entries upon the book in order to make his testimony competent. He directed the work; saw it while in process of construction, and after it had been finished; and any one could have made the addition showing the aggregate of the items testified to by him.

On the other hand, appellants introduced no evidence directly tending to contradict or disprove the evidence of the appellees with reference to the labor and material furnished, and the prices charged in the itemized account. Dr. Salisbury testified that he did not keep an account of the labor and material furnished, but only stated

that in his opinion the labor and material claimed were not furnished.

King, the architect in charge of the work, testified that he did not keep an account, nor did he know the amount of labor and material furnished and paid for by the appellees, but gave his opinion that the labor and material required in doing the extra work on the first and second stories was reasonably worth only $150.00. In this estimate, however, King did not include the labor and material furnished in installing the new distribution system, wiring the elevator, putting in the conduit pipes, and placing the wires therein which ran from a pole on the curb to the top of the building.

Appellants also introduced Weller, an electrician from Huntington, W. Va., who testified as to the unreasonableness of the charges.

The testimony of Wellman and his workmen was competent, and certainly tended to sustain the plaintiff's case. And the same may be said of the testimony of the defendants as to their case. The issue thus sharply made was passed upon by the jury. The chief province of a jury being to decide disputed questions of fact, this case was most appropriately left to its decision. But, it is said that the evidence or testimony of a witness in order to possess the quality of proof must have fitness to induce conviction, and that if it is inherently impossible and absolutely at variance with long established and universally recognized principles or physical laws, it cannot support a verdict; and L. & N. R. R. Co. v. Chambers, 165 Ky. 703, is relied upon to sustain this view of the evidence in this case. In that case Mrs. Chambers testified that she had been thrown over the foot of the bed in which she was sleeping, by a car striking her house, although it was shown by all the witnesses and the position of the car that it never struck her house. The court properly described her testimony as "inherently impossible and absolutely at variance with well established and universally recognized physical laws," and that there was no evidence to sustain Mrs. Chambers' preposterous claim.

While we do not question the rule announced in the Chambers case, we are satisfied it has no application here, since there was competent evidence upon either side of the issue; and to say that the plaintiff's evidence was a mere dogmatic assertion which did not appeal to reason

and did not have substantive and relevant consequence, or fitness to induce conviction, is to give it an unwarranted meaning and application.

It is further suggested that the only way the verdict of the jury can be explained is, that when the court withdrew from their consideration the item of $265.25, the jury thought the defendant was required to pay only the amount of their finding, and that they meant by their verdict to cover the cost of the work done upon the entire five stories. This suggestion, however, is entirely voluntary, and has no support from the record. The contract for wiring the three top stories at $265.25 was not considered in the testimony and was not submitted to the jury; on the contrary, the account for $440.06, and each item thereof, was the sole subject of the proof and the instructions.

We cannot agree, therefore, that the verdict was overwhelmingly against the weight of the evidence, or at all against it.

2. Neither did the court abuse its discretion in refusing a view of the premises to the jury.

Section 318 of the Code provides as follows:

"Whenever, in the opinion of the court, it is proper for the jury to have a view of real property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent no person, other than the person so appointed, shall speak to them on any subject connected with the trial."

It will be noticed that the statute, *supra,* by its terms, provides for a view by the jury "whenever, in the opinion of the court, it is proper" for the jury to have a view of real property which is the subject of litigation.

In applying this statute, we have repeatedly held that whether or not the jury may view the premises is a matter largely in the discretion of the trial court, and its action will not be disturbed unless the discretion has been abused. H. & C. Gravel Road v. Cosby, 103 Ky. 182; Central Asylum v. Hauns, 21 K. L. R. 22, 50 S. W. 978; Valley T. P. Road Co. v. Lyons, 22 Ky. L. R. 646, 58 S. W. 502; Todd v. Cook, 23 Ky. L. R. 1528, 64 S. W. 908; Green v. M. & B. S R. R. Co., 25 Ky. L. R. 1623, 78 S. W. 439; Cohenkus Mfg. Co. v. Rogers, 29 Ky. L. R. 748, 96 S. W.

437; City of Louisville v Caron, 28 Ky. L. R. 844, 90 S. W. 604; Crane v. Congelton, 116 S. W. 341.

When it is considered that a great part of the material placed in the building was covered with lathes and plaster, and in lead pipes, and could not have been seen by the jury had they been permitted to view the premises, it cannot be said the court abused its discretion in this respect. Indeed, we are persuaded the jury could have formed but an imperfect idea concerning the material furnished and work done, by a superficial inspection thereof after it had been completed.

3.   Furthermore, it is insisted that the court erroneously submitted the case for a judgment against Mrs. Salisbury, upon the ground that there is nothing in the record showing any order from her, or from any one authorized to act for her, directing the appellees to do the work sued for.

Mrs. Salisbury owned the lot and the building, in which Dr. Salisbury, her husband, had an interest. There is no contention that Dr. Salisbury was not acting for himself and his wife, or that the architect was not acting for them. Since the enactment of section 2128 of the Kentucky Statutes (Act of 1894), married women have the same power as unmarried women or men, to create liens upon their property, for its improvement; and, where a married woman accepts the material and work placed upon her property, the law implies a promise upon her part to pay for them. Tarr v. Muir, 107 Ky. 283; Johnson v. Bush, 23 Ky. L. R. 1399, 64 S. W. 628, 65 S. W. 158; Deering v. Veal, 25 Ky. L. R. 1809; Black v. McCarley, 126 Ky. 825; Jefferson v. Hopson Bros., 27 Ky. L. R. 140, 84 S. W. 540; Hart v. Bank of Russellville, 127 Ky. 424; Third National Bank v. Tierney, 128 Ky. 845; Swearingen's Exr. v. Tyler, 132 Ky., 465; Thomas v. Boston Banking Co., 157 Ky. 476; Longnecker v. Bondurant, 173 Ky. 427.

4.   Finally, it is insisted that under the amended petition there was a fatal variance between the pleadings and the proof, since it is contended that where there is a special contract to do work, the suit must be upon the contract and not upon the account or implied contract.

There are several answers to this contention.

Under section 129 of the Code, no variance between the pleadings and the proof is material, which does not mislead a party to his prejudice, in maintaining his action or defense upon the merits; and, the party who claims to

have been so misled must show that fact to the satisfaction of the court, whereupon the court may order the pleading to be amended upon such terms as may be just. But, since the appellants made no claim in the circuit court that they were misled by the pleading and did not ask for a continuance, they were not prejudiced, even though it should be said, for the sake of the argument, that there was a material variance.

5.   Furthermore, the appellants cannot now raise the question of variance, since it was not made a ground for a new trial. Hatfield v. Adams, 123 Ky. 422; Acme Mills & Elevator Co. v. Rives, 141 Ky. 783; L. & N. R. R. Co. v. Wilkins, 143 Ky. 575; City of Frankfort v. Buttimer, 146 Ky. 818; L. & N. R. R. Co. v. Commonwealth, 158 Ky. 562; Kentucky Traction & Ter. Co. v. Peel, 160 Ky. 240; Cowan v. Dillon, 163 Ky. 498.

The purpose of this beneficent rule of practice is to give the circuit court an opportunity to correct any errors committed upon the trial before this court can be called upon to do so.

Judgment affirmed.