879 P.2d 92

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ronald G. OLGUIN, Defendant–
Appellant.**

**No. 14383.**

Court of Appeals of New Mexico.

March 30, 1994.

Certiorari Granted June 7, 1994.

Tom Udall, Atty. Gen., Daniel J. Pearlman, Richard J. Klein, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BIVINS, Judge.

Ronald G. Olguin (Defendant) appeals his convictions for soliciting a bribe as a member of the legislature under New Mexico Constitution Article IV, Sections 39–40, demanding or receiving a bribe as a public official under NMSA 1978, Section 30–24–2 (Repl. Pamp.1984), attempted fraud in excess of $2500 under NMSA 1978, Sections 30–16–6 and 30–28–1 (Repl.Pamp.1984), and conspiracy under UMSA 1978, Section 30–28–2 (Repl. Pamp.1984). He raises the following issues on appeal: (1) Defendant cannot be convicted of both soliciting a bribe as a member of the legislature and soliciting a bribe as a public official without violating his double jeopardy rights, or, in the alternative, without offending the general-specific rule; (2) the victim of the solicitation of a bribe by a member of the legislature here was not "a person or corporation"; (3) the evidence is insufficient to sustain the convictions; and (4) the trial court erred in (a) admitting the statements of the alleged co-conspirator, (b) depriving Defendant of his right of confrontation, and (c) ordering incarceration instead of probation. Because the statutory crime of demanding or receiving a bribe as a public official conflicts with the constitutional crime of soliciting a bribe as a member of the legislature and is therefore void to the extent that the statute relates to legislators, we set aside Defendant's conviction under Section 30–24–2. We affirm his remaining convictions.

## FACTS

The facts giving rise to Defendant's convictions arose out of a series of meetings between Defendant and employees of Staying

Straight Community Corrections (SSCC), a program under the umbrella of Conflict Management, Inc. (CMI). SSCC was in need of maintaining their current funding level and was also interested in obtaining increased funding. Through one of SSCC's employees, Rudy Nunez, Defendant offered to assist in obtaining funding for SSCC. The central issues at trial focused on whether Defendant's conduct amounted to the crimes with which he was charged. We will discuss additional pertinent facts as they become necessary to the discussion.

1. *CONVICTIONS FOR SOLICITING A BRIBE AS A MEMBER OF THE LEGISLATURE AND SOLICITING A BRIBE AS A PUBLIC OFFICIAL*

Defendant challenges the convictions for soliciting a bribe as a member of the legislature and soliciting a bribe as a public official on double jeopardy grounds, as well as under the general-specific rule. *See* N.M. Const. art. II, § 15 (double jeopardy); *State v. Hernandez,* 116 N.M. 562, 564, 865 P.2d 1206, 1208 (Ct.App.) (setting out the general-specific rule), *cert. denied,* 116 N.M. 801, 867 P.2d 1183 (1993).

Although not raised below or argued on appeal, this Court was concerned about the authority of the legislature to change a penalty for an offense which the constitution defines and for which it sets a penalty. We deem that this Court has jurisdiction to consider the question because, if the statutory provision is determined void, Defendant's conviction under the statute cannot stand. *See State v. Aranda,* 94 N.M. 784, 787, 617 P.2d 173, 176 (Ct.App.1980). Because the parties had not addressed this issue, we scheduled oral argument and invited argument. That has been done, and we conclude that to the extent that Section 30–24–2 relates to legislators specifically, it is voided by New Mexico Constitution Article IV, Sections 39–40. We reached this conclusion for the following reasons.

■ What is the effect of a conflict existing between a state constitutional provision which defines a crime and sets forth the penalty for that crime and a statute which also defines and/or sets the penalty for the same crime? Courts which have considered the question apply the constitutional penalty and void those portions of the statute which directly conflict with the constitutional provision. *See Commonwealth v. Louisville & N.R.,* 112 Ky. 75, 65 S.W. 158 (1901); *Louisville & N.R. v. Commonwealth,* 105 Ky. 179, 48 S.W. 416 (1898); *State v. Hejduk,* 94 Okla.Crim. 178, 232 P.2d 664 (1951); *Harrigill v. State,* 90 Okla.Crim. 347, 214 P.2d 263 (1950), *limited by Atchley v. Board of Barber Examiners,* 208 Okla. 453, 257 P.2d 302, 305 (1953); *Taylor v. State,* 38 Okla.Crim. 350, 261 P. 978 (1927), *overruled on other grounds by McCreary v. Venable,* 86 Okla.Crim. 169, 190 P.2d 467 (1948); *Ex parte Smith,* 24 Okla.Crim. 415, 218 P. 708 (1923); *Nowakowski v. State,* 6 Okla.Crim. 123, 116 P. 351 (1911). This is a case of first impression in New Mexico, and we choose to now adopt the reasoning of those cases which resolved the conflict in favor of the constitution.

■ A basic comparison of the provisions of the constitution and the statute at issue reveals they address the same conduct but impose different penalties. The constitutional provision at issue, Article IV, Section 39, provides in pertinent part:

> [A]ny member of the legislature who shall solicit from any person or corporation any money, thing of value or personal advantage for his vote or influence as such member shall be deemed guilty of solicitation of bribery.

Article IV, Section 40 then adds that any person convicted of the above crime shall be deemed guilty of a felony and upon conviction punished by a fine of not more than $1000 or imprisonment in the penitentiary for not less than one nor more than five years. The statutory provision, Section 30–24–2, states:

> Demanding or receiving bribe by public officer or public employee consists of any public officer or public employee soliciting or accepting, directly or indirectly, anything of value, with intent to have his decision or action on any question, matter, cause, proceeding or appointment influenced thereby, and which by law is pend-

94

ing or might be brought before him in his official capacity.,

Whoever commits demanding or receiving bribe by public officer or public employee is guilty of a third degree felony, and upon conviction thereof such public officer or public employee shall forfeit the office then held by him.

The basic sentence for a third degree felony is three years imprisonment. NMSA 1978, § 31–18–15 (Repl.Pamp.1990).

In *Louisville & N.R.*, 65 S.W. at 159–60, the Kentucky Court of Appeals said:

If a penalty for a certain offense is prescribed by the constitution, the legislature of Kentucky has no more authority to alter or change it than the legislature of any other state in the Union. . . . [C]ourts should have no difficulty in understanding that if the legislature attempted to fix a penalty other than that prescribed by the constitution, or should attempt to provide that the question of guilt or innocence should be determined by or made dependent upon the will of any one other than a court of competent jurisdiction, the legislature has transcended its authority.

The Kentucky Court also held that the constitutional provisions were self-executing, fully defined the offenses, and prescribed the penalties, and then concluded that the legislature may not enact a statute in conflict with the constitutional provisions and so far as the statutes at issue conflicted they were voided. *Id.* at 160–61. We determine this rule applies to the case before us.

■ Accordingly, we hold that, to the extent that Section 30–24–2 relates specifically to legislators, it is voided by the constitutional provision. In reaching this result, we note that the legislature is not preempted from passing laws in aid of or supplemental to a constitutional provision so long as those laws do not exceed any limitations contained in the constitutional provisions. *See Nowakowski*, 116 P. at 353.

We, therefore, set aside Defendant's conviction under Section 30–24–2 (demanding or receiving a bribe by a public official).

## 2. SOLICITATION WAS NOT FROM "A PERSON OR CORPORATION"

Defendant argues that his conviction under the constitution for soliciting a bribe as a member of the legislature must be dismissed because the criminal complaint referred to the program, SSCC, instead of CMI, the corporation. Defendant contends that SSCC was not a person or a corporation as required under Article IV, Section 39, and thus dismissal of the conviction is warranted. We reject this argument.

Although the United States Supreme Court has held that "person" is broad enough to include a political party, *United States v. Shirey*, 359 U.S. 255, 257, 79 S.Ct. 746, 747, 3 L.Ed.2d 789 (1959), we determine that we can resolve this issue by concluding that SSCC was a "corporation."

Corinne Taylor, the managing partner of CMI, testified that SSCC was a program "under the umbrella of Conflict Management"; however, she also testified that CMI was a corporation. Thus, the solicitation was actually from a corporation. The fact that the criminal complaint referred to SSCC does not change the result. That program had to act through some entity; that entity was CMI, a corporation.

## 3. SUFFICIENCY OF EVIDENCE

Defendant additionally claims that the evidence was insufficient to establish guilt beyond a reasonable doubt for his several convictions.

■ The test to determine sufficiency of evidence is whether substantial direct or circumstantial evidence exists to support the verdict of guilt beyond a reasonable doubt for every element essential to convict. *State v. Sutphin*, 107 N.M. 126, 130–31, 753 P.2d 1314, 1318–19 (1988). We must view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of the verdicts. *State v. Cotton*, 109 N.M. 769, 771, 790 P.2d 1050, 1052 (Ct.App.), *cert. denied*, 109 N.M. 751, 790 P.2d 1032 (1990). We must also determine if any rational jury could have found each element of the crimes to have been established beyond a reasonable doubt.

*State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). With those standards in mind, we examine the sufficiency of the evidence as to each of the remaining convictions.

### a. *Soliciting a Bribe as a Member of the Legislature*

██ Defendant does not challenge that he was a member of the New Mexico legislature or that he solicited money, $15,000, from SSCC. Defendant does, however, challenge the finding that he solicited that money "for his vote or influence as a member of the Legislature." Although the proposal Defendant submitted to SSCC (an agreement between Ron Olguin & Associates, Inc. and SSCC) is somewhat vague as to the actual scope of Defendant's services to be rendered, we conclude a rational jury could find that the fee to be paid included Defendant's influence as a member of the legislature.

Defendant and CMI representatives had a number of conversations, some of which were taped. Others were the subject of testimony. The transcripts or testimony concerning these conversations are evidence from which the jury could find that Defendant offered to perform two types of services in exchange for compensation by CMI. First, he would utilize his contacts and influence with the Bernalillo County Commission (the County) to obtain funding for SSCC from that governmental entity. Second, he would perform services in the legislature by assisting CMI to maintain its current budget and to secure additional funding from the legislature. Defendant argues that the fee to be paid related only to the County and that his consulting work in that regard did not violate the law. We believe, however, the conversations involving Defendant and the language of the written proposal support a jury determination that the services being offered for the $15,000 fee also included payment for Defendant's influence as a member of the legislature.

Paragraph 2 of Defendant's proposal to SSCC dealing with compensation, which Defendant delivered to CMI with his state representative card attached, shows a payment schedule which was arguably tied to Defendant's efforts in the legislature. The proposal called for installment payments totalling $7000 and

> a final payment of $8,000.00 shall be due upon successful completion of mission. SSCC's present budget is $500,000.00. An appropriation of $100,000 or more over and above previous budget for monitoring, personnel, and counseling services shall trigger the final payment.

Conversations between Defendant and Taylor shed additional light on the intended meaning of these words.

Taylor met with Defendant after Elizabeth Endean, the program director of CMI, informed Taylor of Defendant's proposal to secure extra funding for a fee. Although Taylor was uncomfortable with the idea, she met with Defendant on October 9, 1991. Believing that the proposal might involve a bribe, Taylor consulted with a member of the Board of CMI and subsequently contacted the attorney general's office. Taylor then engaged in several follow-up recorded conversations with Defendant, both by phone and in person. By professing confusion as to what Defendant had in mind and indicating a need for clarity in order to present the proposal to the Board of Directors of CMI, Taylor was able to get Defendant to explain what he was proposing in greater detail.

During these conversations, while Defendant talked to Taylor in terms of securing $100,000 from the County, he also spoke of securing an additional $100,000 from the legislature for CMI over and above their present budget of $500,000. A jury could infer from the evidence that the proposal itself included Defendant's use of influence in the legislature to secure an additional $100,000. Additional conversations that transpired between Defendant and Taylor are even more telling.

Defendant, although making disclaimers at times in his conversations with Taylor that he could not put himself in a position of conflict, suggested that he intended to use his influence as a legislator in consideration for at least a part of the fee to be paid. For example, Defendant spoke of how House Bill 2, the Finance Bill, was handled; his close

contacts with the key members of the legislature who determined allocation of funds; and how he would be in a position to secure the correct wording in House Bill 2. Defendant's statements could have led a rational jury to find he intended to use his influence to secure funding in the legislature on behalf of SSCC for a portion of the requested fee.

Thus, based on the evidence, we sustain the conviction for soliciting a bribe as a member of the legislature.

### b. *Attempt to Commit Fraud*

■ Under the instructions given to the jury for the crime of attempt to commit fraud, the State was required to prove beyond a reasonable doubt that Defendant intended to commit a crime of fraud of an amount in excess of $2500, and that he began to do an act which constituted a substantial part of the crime of fraud but failed in that endeavor. *See* §§ 30–16–6 & 30–28–1. The gravamen of the crime focuses on words or conduct which misrepresented a fact intending to deceive or cheat for the purpose of obtaining an amount in excess of $2500. *See State v. Crews,* 110 N.M. 723, 729, 799 P.2d 592, 598 (Ct.App.), *cert. denied,* 109 N.M. 232, 784 P.2d 419 (1989).

■ Under Section 30–16–6, "[f]raud consists of the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations." Under Section 30–28–1, in establishing attempt to commit a felony, the State was required to prove "an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." We have recognized in *State v. Johnson,* 103 N.M. 364, 367, 707 P.2d 1174, 1177 (Ct.App.), *cert. quashed,* 103 N.M. 344, 707 P.2d 552 (1985), that the crime of attempt to commit a felony is a specific intent crime.

■ In light of the elements of the crimes, we must determine on appeal whether there was sufficient evidence for a jury to find that the representations Defendant made to induce SSCC to enter into a contract with him were false and were made with the requisite intent. We hold that the evidence was sufficient to permit the jury to reach a verdict of guilty.

First, because of Defendant's intimate knowledge of the workings of the County government—he had recently been County manager—the jury could properly find that Defendant made knowingly false representations to SSCC regarding the possibility of obtaining the funding based on the reduction of funding of another program. Defendant represented to SSCC that County funding "would be coming available" and that the "funds could be again guaranteed." The testimony from the various commissioners, however, first indicated that the amount of money to be reduced from the other program was only $40,000, not the $100,000 that Defendant represented to SSCC. In addition, once the $40,000 was deducted, the money was not immediately available elsewhere and in fact might never become available. The commissioners testified that the process is long and complicated, with city concurrence required and mid-year funding practically impossible. With these facts, the jury could find that Defendant could not in good faith have thought funding would be available.

Second, there was evidence that Defendant represented to SSCC that he had already talked about the funding matter with two commissioners and that they were interested in it. The commissioners, however, testified at trial that Defendant had never mentioned the subject to them. Based on this testimony, the jury was entitled to find that Defendant's representations to SSCC concerning his contacts with the County were knowingly false.

Based on the above evidence, we believe that a rational jury could find Defendant guilty of attempted fraud in excess of $2500.

### c. *Conspiracy*

■ Under the trial court's instructions to the jury, in order to convict for conspiracy to commit the crime of solicitation of a bribe or the crime of fraud in excess of $2500, the State had to prove beyond a reasonable doubt that Defendant and another person by words or acts agreed together to commit one or more of those crimes and that Defendant

and the other person intended to commit one or more of those crimes. *See* § 30–28–2. " 'For a conspiracy to exist there must be a common design or a mutually implied understanding; an agreement.' " *State v. Ross,* 86 N.M. 212, 214, 521 P.2d 1161, 1163 (Ct.App. 1974) (quoting *Morris v. Dodge Country, Inc.,* 85 N.M. 491, 492, 513 P.2d 1273, 1274 (Ct.App.), *cert. denied,* 85 N.M. 483, 513 P.2d 1265 (1973)). Conspiracy is a crime that may be established by circumstantial evidence because "[g]enerally, the agreement is a matter of inference from the facts and circumstances." *Ross,* 86 N.M. at 214, 521 P.2d at 1163. The primary issue with conspiracy is whether the circumstances, taken together, show the parties united to accomplish a scheme. *See id.* We hold that the evidence is sufficient to establish beyond a reasonable doubt a conspiracy between Defendant and Nunez to commit solicitation of a bribe.

We determine that the jury could have found Nunez feared losing his job because of the loss of funding; figured that Defendant would be the best person to help; asked Defendant to help; and then made diligent efforts to persuade SSCC to enter into a contract with Defendant under which Defendant would perform illegal services. It was Nunez who arranged the first meeting with SSCC management in early October 1991, at which time Defendant told Endean that he could obtain for SSCC between $100,000 and $150,000 in additional funding. Defendant told Endean, in Nunez's presence, that he would charge a fee of $15,000 to accomplish that. Reviewing Taylor's testimony, as well as notes made by Taylor and Endean, it appears that in Nunez's presence Defendant told Endean at Defendant's second meeting with her that he had many connections with the legislative finance committee and discussed the possibility of guaranteeing monies for fiscal year 1992. At the third meeting between Defendant, Nunez, Endean, and Taylor, Defendant apparently stated that he could influence the legislative finance committee's decision concerning to whom they gave money.

Additionally, there was evidence of statements made by Defendant and Nunez promoting the other's participation. For example, Defendant described how Nunez could be utilized in Santa Fe in securing funding. Defendant even mentioned that "[he could] just walk [Nunez] right through it." There were also statements from Nunez from which the jury could infer that he was in on the conspiracy from the outset. Nunez told Taylor that "if we're going to play the political run, we better tie ourselves in somewhere." Taylor responded by asking Nunez if that was why he went to Defendant, and Nunez said that he talked to his brother who told him, "Rudy [Nunez], the person that can help you the most right now is [Defendant]." That Nunez knew that Defendant would be using his influence could be inferred by his follow-up statement to Taylor indicating other legislators were being watched—"[t]hey are watching all those guys real careful right now."—and therefore Defendant was their man. Through other conversations Nunez also promoted Defendant as a person who could get things done. Finally, Nunez was also aware that Defendant would charge for his services. Nunez stated that the amount would be "[a] percentage, I think he had mentioned." We determine the above-stated evidence supports a conspiracy to commit the crime of solicitation of a bribe.

The jury instruction on conspiracy, however, allowed alternative underlying felonies to support the conspiracy charge, with a possibility of conspiracy to solicit a bribe and/or a conspiracy to commit a crime of fraud in excess of $2500. While we determine there was sufficient evidence to support the conviction of a conspiracy to commit the crime of solicitation of a bribe, we question whether the evidence was sufficient to support a conviction of conspiracy to commit the crime of fraud in excess of $2500.

Accepting a fee to use Defendant's influence with the County did not by itself constitute a crime. The crime occurred when Defendant made misrepresentations. However, there is a dearth of evidence that Nunez knew or had reason to know Defendant would make or had made misrepresentations in an effort to secure an agreement with SSCC to seek funding from the County.

Because of the way in which the instruction was worded, a question arises as

to whether it is necessary that there also be sufficient evidence to support a conspiracy to commit the crime of fraud in excess of $2500. Although Defendant did not argue this question in his brief, we believe it is implicated by Defendant's challenge to the sufficiency of the evidence; thus, we asked the parties to brief the question for oral argument. We determine that evidentiary support for this crime is not necessary in order to uphold the conspiracy count. Also, because of the wording of the jury instruction, the verdict in itself does not disclose on which theory of conspiracy the jury convicted Defendant, and thus there arises an additional issue as to whether this fact is fatal so as to require remand for a new trial on the conspiracy count. We hold that it is not.

In *State v. Shade*, 104 N.M. 710, 722, 726 P.2d 864, 876 (Ct.App.), *cert. quashed*, 104 N.M. 702, 726 P.2d 856 (1986), we addressed a similar question. In that case, one of the counts charged a defendant, in the alternative, with conspiracy to commit separate crimes. *Id.* at 722, 726 P.2d at 876. The defendant in *Shade* argued on appeal that there was insufficient evidence as to all of the alternative methods of committing the crime of conspiracy and that failure of proof as to one of the alternative methods invalidated the general verdict under *State v. Carr*, 95 N.M. 755, 765, 626 P.2d 292, 302 (Ct.App.), *cert. denied*, 454 U.S. 853, 102 S.Ct. 298, 70 L.Ed.2d 145 (1981). *Shade*, 104 N.M. at 722, 726 P.2d at 876. *Carr* relied on *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). *Carr*, 95 N.M. at 765, 626 P.2d at 302. The *Shade* Court agreed and set aside the general verdict on the ground that one of the alternative grounds was unsupported by evidence. *Shade*, 104 N.M. at 723, 726 P.2d at 877. We reasoned that it was impossible to determine if the jury relied on that ground in reaching its verdict, and thus we ordered a new trial on the charge of conspiracy leaving out the alternative ground that lacked support in the evidence. *Id.*

Since *Shade*, *Carr*, and *Yates* were decided, the United States Supreme Court has had occasion to revisit the question. In *Griffin v. United States*, 502 U.S. 46, 49–52, 112 S.Ct. 466, 469–70, 116 L.Ed.2d 371 (1991), the Supreme Court held that due process did not require that a general guilty verdict on a federal multiple-object conspiracy charge be set aside if evidence is found inadequate to support a conviction as to one object. In reaching that result, the Court said the precedent governing the case was not *Yates*, which invalidated a general verdict when one of the possible bases of conviction was legally inadequate, but rather *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), which upheld a general verdict when one of the possible bases of conviction was supported by inadequate evidence. *Griffin*, 502 U.S. at 54–58, 112 S.Ct. at 472–73. The *Griffin* Court said the line between *Yates* and *Turner* makes good sense. *Id.* 502 U.S. at 59, 112 S.Ct. at 474.

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence, *see Duncan v. Louisiana*, 391 U.S. 145, 157 [88 S.Ct. 1444, 1451–52, 20 L.Ed.2d 491] ... (1968).

*Griffin*, 502 U.S. at 59, 112 S.Ct. at 474.

Because the case before us today required the jury to determine which of the two underlying crimes was supported by evidence, as opposed to determining the legality or constitutionality of the underlying felonies, we now adopt the reasoning of *Griffin*, and uphold the conviction for conspiracy, notwithstanding that one of the underlying crimes may not have been supported by sufficient evidence. We overrule *Shade* and *Carr* to the extent they hold to the contrary. *See People v. Guiton*, 4 Cal.4th 1116, 17 Cal. Rptr.2d 365, 847 P.2d 45, 50–51 (1993) (en

banc); *State v. Grissom,* 251 Kan. 851, 840 P.2d 1142, 1170–71 (1992).

We observe that, as suggested by the *Griffin* Court, the perceived problem could also be avoided by the district court if it, in its discretion, eliminated from the jury's consideration an alternative basis of liability that does not have adequate evidentiary support. *Griffin,* 502 U.S. at 60, 112 S.Ct. at 474. But, as the *Griffin* Court noted, "[t]he refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction." *Id.*

From our review of the above and other evidence, we hold that the jury could find a conspiracy between Defendant and Nunez to commit the crime of solicitation, and therefore, we affirm Defendant's conviction.

### 4. *CLAIMED TRIAL COURT ERROR*

Defendant's final claims are based on the admission of Nunez' statements and the trial court's decision not to order probation in lieu of a jail sentence. We address these issues summarily.

#### a. *Admission of Statements by Co-conspirator*

■ Defendant contends that it was error to admit State's Exhibits 5 and 7, the statements of co-conspirator Nunez, unless and until the State established a prima facie case of conspiracy. *See* SCRA 1986, 11–801(D)(2)(e); *State v. Harge,* 94 N.M. 11, 17, 606 P.2d 1105, 1111 (Ct.App.1979) ("Out of court statements made by a co-conspirator about matters relating to the conspiracy are not admissible unless and until a prima facie case of conspiracy is shown by other independent evidence."), *overruled on other grounds by Buzbee v. Donnelly,* 96 N.M. 692, 634 P.2d 1244 (1981). Defendant, however, recognizes that the rule laid down in *Harge* has been modified by *State v. Zinn,* 106 N.M. 544, 551, 746 P.2d 650, 657 (1987). In *Zinn,* our Supreme Court held that the foundational requirement of proof of a conspiracy by independent evidence does not need to be shown when the State offers the co-conspirator's testimony; instead, the court may rule "conditionally." *Id.* Defendant also concedes that the statements themselves can establish a prima facie case of conspiracy. In any event, *Zinn* was satisfied because, as we have already ruled, there was even sufficient evidence to sustain a conviction of conspiracy. We, therefore, hold that the trial court correctly admitted statements of Nunez.

#### b. *Deprivation of Right to Confront*

■ Defendant contends that Nunez should have been required to testify in person so that Defendant could confront him as required under the Confrontation Clause. At trial, Nunez asserted his Fifth Amendment privilege against self-incrimination and did not testify in person. Defendant now argues that his right to confront the witness controls over Nunez's Fifth Amendment right. Defendant seems to concede, however, that *State v. Curtis,* 87 N.M. 128, 529 P.2d 1249 (Ct.App.1974), holds otherwise. *Curtis* states that absent an immunity statute, a person's right not to incriminate himself is sacred. *Id.* at 129, 529 P.2d at 1250. Nevertheless, because Article IV, Section 41 of the New Mexico Constitution allows for use immunity, Defendant contends Nunez was not subject to self-incrimination and should have been ordered to testify.

Defendant admits that he did not raise this specific argument at trial. *See* SCRA 1986, 12–216 (Repl.1992) (to preserve question for review, it must appear that a ruling or decision by the district court was fairly invoked). The purpose of the preservation rule is to permit rulings to be modified at a time when corrections can be made or alternatives pursued. In this case, had the argument been raised, the State would have had an opportunity to take advantage of the option of granting Nunez use immunity. Because the objection was not made at trial that use immunity could have been granted, we do not think the issue raised on appeal is before us.

#### c. *Incarceration Instead of Probation*

■ Finally, Defendant claims the trial court abused its discretion in ordering incarceration instead of probation. Defendant, however, does not claim that his sentence was contrary to the law. A sentence imposed which is in accordance with the law does not constitute an abuse of discretion. *See State v. Augustus,* 97 N.M. 100, 101, 637 P.2d 50, 51 (Ct.App.), *cert. denied,* 97 N.M. 621, 642 P.2d 607 (1981). The trial court did not therefore abuse its discretion.

**100**

*CONCLUSION*

For the reasons stated, we set aside the conviction for demanding or receiving a bribe as a public official, and affirm Defendant's convictions for solicitation of a bribe by a legislator and also his convictions for attempted fraud in excess of $2500 and conspiracy. The case is remanded to the district court to vacate Defendant's conviction for demanding or receiving a bribe as a public official under Section 30–24–2. At oral argument, Defendant requested that we authorize the district court to also resentence him on the basis that the original sentence was influenced by the fact that Defendant had been convicted of four felonies, whereas now he is convicted of only three. We find action on this request unnecessary. *See* SCRA 1986, 5–801.

**IT IS SO ORDERED.**

MINZNER, C.J., and HARTZ, J., concur.